# Grace Cuddyer *vs.* The Stop & Shop Supermarket Company.

Norfolk. March 8, 2001. - July 12, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Anti-Discrimination Law,* Sex, Employment. *Massachusetts Commission Against Discrimination. Limitations, Statute of. Practice, Civil,* Summary judgment.

Discussion of the effect of the continuing violation doctrine on the statute of limitations governing G. L. c. 151B claims of sexual harassment. [530-532]

Discussion of the theory of sexual discrimination based on a hostile work environment. [532-534]

Statement of the Federal interpretation ("revelatory" standard) that a continuing violation claim of sexual harassment will fail if the plaintiff was, or should have been, aware that she was being unlawfully discriminated against while earlier acts, now untimely, were taking place [534-536], and the reasons why, in construing G. L. c. 151B, this court frequently does not follow the reasoning of Federal appellate decisions applying Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1) [536-539].

On a claim against the defendant employer seeking damages for discrimination by means of sexual harassment in the workplace in violation of G. L. c. 151B, § 4 (1) and (16A), alleging that the plaintiff employee had been subjected to a hostile work environment, this court held that the plaintiff had set forth an actionable case of sexual harassment and that, based on the continuing violation doctrine, her claim was not barred by the six-month limitation period set forth in G. L. c. 151B, § 5, for complaints filed with the Massachusetts Commission Against Discrimination. [539-540]

This court, stating that a female employee had set forth a prima facie claim against her employer of discrimination based on sexual harassment, vacated the grant of summary judgment for the employer and remanded the case to the Superior Court for proceedings consistent with guidelines set forth in this opinion. [540-542]

Civil action commenced in the Superior Court Department on September 23, 1997.

The case was heard by *Judith Fabricant,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Leonard H. Kesten (Deidre Brennan Regan & Steven C. Sharaf* with him) for the plaintiff.

*Lisa J. Damon (Kent D.B. Sinclair* with her) for the defendant.

The following submitted briefs for amici curiae:

*Marisa A. Campagna & Deborah M. Silva* for the Massachusetts Chapter of the National Employment Lawyers Association.

*Simone Liebman* for the Massachusetts Commission Against Discrimination.

*Loretta M. Smith* for the Associated Industries of Massachusetts & another.

GREANEY, J. The plaintiff, Grace Cuddyer, was employed as a line worker in the commissary of the defendant, The Stop & Shop Supermarket Company. She brought a complaint in the Superior Court against the defendant seeking damages for discrimination by means of sexual harassment in the workplace in violation of G. L. c. 151B, § 4 (1) and (16A), alleging that she had been subjected to a hostile work environment. A judge in the Superior Court granted summary judgment for the defendant. The judge primarily concluded that the plaintiff's claim was barred by the six-month statute of limitations set forth in G. L. c. 151B, § 5, for complaints filed with the Massachusetts Commission Against Discrimination (MCAD). The plaintiff appealed, and we granted her application for direct appellate review to examine the application of the six-month statute of limitations in a claim of sexual harassment of the type alleged here. We conclude that the plaintiff has set forth an actionable case of sexual harassment and that, based on the continuing violation doctrine, her claim is not barred by the six-month limitation period. Accordingly, we vacate the grant of summary judgment and remand the case to the Superior Court for trial.

We set out the background of the case by reciting the facts in the summary judgment record as viewed in the plaintiff's favor,[1] see *Tetrault* v. *Mahoney, Hawkes & Goldings,* 425 Mass. 456, 459 (1997), and the reasoning of the judge in concluding that the defendant was entitled to summary judgment.

---

[1] We shall also state the defendant's policy as to sexual harassment.

The plaintiff has been employed by the defendant in the manufacturing division of its Readville facility since 1973. Since her hire, the plaintiff has worked in the commissary as a line worker on a variety of production lines, including the soda and the cold kitchen lines. The commissary staff includes employees at three levels: supervisors; foremen; and line workers. Supervisors are salaried, nonunion employees, whose job responsibilities include directing manufacturing operations, assigning personnel to the production lines, and addressing disciplinary and other problems. Foremen are union members, paid on an hourly basis, whose function is to implement the supervisors' instructions and generally to run the production line. Their responsibilities include instructing line workers as to specific production requirements, directing where on the line they work, scheduling the workers' breaks, acting on workers' requests to leave the line during their shift (such as to visit the restroom), and, in the event of problems on the line, calling maintenance or the supervisor. Each production line has one or two foremen. As of 1998, of the twelve foremen employed in the commissary, only one was female, and, out of approximately 120 employees working on production lines, only six or seven were female.

The events relevant to this case began shortly after the outset of the plaintiff's employment.[2] The plaintiff alleges that, from "day one," she was subject to both verbal and physical sexual conduct by her then supervisor Billy Leach. According to the plaintiff, Leach subjected her to harassment, by constantly seeking dates and asking her "can I touch you once, can I kiss you in your ear, can I kiss your belly button, stuff like that." The plaintiff did not report Leach's behavior to management, because "Billy does it to everybody" (although the plaintiff also indicated that Leach treated her differently from other females in the company), and because she felt that, if she complained, he could make her work harder. The plaintiff also testified that, a couple of times in the past, Leach had made her work harder

---

[2] We do not consider the plaintiff's evidence of events occurring in the mid-1970's, when the plaintiff found a copy of Playgirl magazine on the windshield of her automobile parked in the defendant's lot. The plaintiff apparently has no idea who was responsible for this incident.

after she had told him to leave her alone. The plaintiff is not specific as to when Leach's offensive conduct occurred.

Beginning in 1986 or 1987, and continuing until September, 1994, a line worker, Pedro Cordero, continually would rub against or bump into the plaintiff. On at least one occasion, Cordero bent over and "hit his fanny against [the plaintiff's]." More than once, Cordero purposefully banged his arm into the plaintiff's breasts. He also repeatedly made comments to the plaintiff about her body, telling her she had a "beautiful body, nice boobs, [and] nice fanny." Sometime before September, 1994, while the plaintiff was working on the cold kitchen line, Cordero approached the plaintiff and said, "Grace, I had a dream about you. . . . I had a dream of you sticking your finger up my ass, and, boy it felt good." The plaintiff did not report this incident because she did not want to cause trouble. The plaintiff also perceived, from prior experience of reporting unwelcome advances of one foreman, Henry Sanchez (to be set forth shortly), and having Sanchez deny the conduct, that nothing would come of her complaints. The plaintiff finally reported the dream incident to management during a meeting on September 23, 1994, and to Jimmy Beggan, her union representative, who spoke with Cordero. The conduct subsequently ceased.

The plaintiff often worked under the direction of foremen Al Pearson and David Arce on the soda line. Pearson regularly used vulgar language (such as "f-you," "Mother —," and "cunt"); repeatedly approached female employees, moving in a sexually suggestive manner; and frequently asked the plaintiff about her menstrual cycle. She complained of the vulgar language to Beggan, who discouraged her from bringing Pearson's behavior to the attention of management.

On February 16, 1991, the plaintiff was working on the soda line. When she asked Pearson for permission to go to the restroom, he replied, "Oh, it's that time of the month again. . . . Go ahead." After the plaintiff returned to the line, Arce crept up behind her and attached a sanitary pad spotted with raspberry syrup to her back. Other employees laughed and the plaintiff felt humiliated and angry. She immediately informed the supervisor about the incident, telling him, "I can take a joke,

but this is ridiculous. This has just gone too far." During a meeting in the supervisor's office, Arce apologized and both the plaintiff and Arce returned to work. Although Arce was fired by the defendant for his part in the incident, he was reinstated, after four months unpaid leave, by an arbitrator.[3]

In the wake of the sanitary pad incident, both Pearson and Arce treated the plaintiff with hostility. On his return from unpaid leave, Arce had resumed his position as a foreman on the soda line. He once told the plaintiff that it was her fault that he had lost four months pay and also made false reports about the plaintiff's work performance to her supervisor. The plaintiff perceived that Pearson and Arce's behavior toward her was motivated by a desire to get her removed from the soda line. The plaintiff told Beggan, who advised her not to complain to management. She followed that advice (although continuing to complain to the union on a weekly basis), except on one occasion, when she and another woman complained that Arce and Pearson were giving them a "hard time." Discussion ensued regarding alleged inadequacies in the plaintiff's work, and no disciplinary action resulted. During this time, other workers as well expressed anger that the plaintiff had caused trouble for Arce. The hostility directed at the plaintiff continued until Arce left as foreman of the soda line in December, 1994, or January, 1995.[4]

In 1993, the plaintiff frequently worked on the cold kitchen line under the direction of foreman Henry Sanchez. Sanchez several times asked her for a date and offered to take care of her and give her money. Once he pulled her hair, telling her that he would take her strands of hair to a witch doctor to make her fall in love with him. When the plaintiff refused Sanchez's advances, he would get angry and scream at her, or falsely ac-

---

[3]The arbitrator concluded that Arce's behavior did constitute sexual harassment appropriately subject to discipline, but that termination was too severe a penalty, because Arce had no history of sexual harassment or sexually charged practical jokes and the incident was an isolated one.

[4]On one occasion, the plaintiff met with legal counsel for the union concerning her complaints. The exact date of this meeting is unclear (sometime before September 16, 1994), as is the outcome of the meeting, although the record indicates that a letter was sent as a result of the meeting (exactly where the letter was sent, and its contents, are not disclosed by the record).

cuse her of doing something she had not done. Once Sanchez told the plaintiff that "[he was] going to have [her] taken out of the cold kitchen [line]." At times, after Sanchez complained to the supervisor about the plaintiff's work performance, she would be taken out of the cold kitchen line. The plaintiff complained to the union and to management, and Sanchez (who denied the plaintiff's accusations) was warned. Because of management's failure to take action against Sanchez, the plaintiff was left with the impression that her complaints to management were useless.

On September 14 or 15, 1994, a glue machine, used to attach labels to bottles on the soda line, jammed. Following customary procedure for this frequent occurrence, Pearson put on disposable surgical gloves and reached into the pail of glue to remove any labels stuck inside. He then stood behind the plaintiff with glue dripping from his gloves and jerked his hands back and forth to simulate masturbation. The plaintiff turned around and saw him pretending to masturbate behind her. Shocked and dumbfounded, she reported this incident to her supervisor. On September 23, 1994, at a meeting with management and union representatives, the plaintiff became so upset while recounting the incident that she had to be helped out of the room. Pearson denied that he had done anything except wipe excess glue from the gloves before removing them. He was not disciplined for the incident, but was warned that he would be terminated if any future sexual harassment occurred. The next day, Pearson wore a hat on which was affixed a fluorescent sign, reading "Beware." The plaintiff believed that this message was directed at her.

After this incident, Pearson continued to give the plaintiff a "very hard time," and often yelled at her on the job. Other employees also gave the plaintiff a hard time. On one occasion, approximately six months after the glue incident, a male coworker told her, "Don't worry, I'm not going to touch you. You're nothing but trouble anyway." On another occasion, the same coworker made the sign of a cross as she walked by him. Although the plaintiff spoke with Beggan about the matter, the male coworker continued to bother her. The offensive conduct directed at the plaintiff by Pearson, however, stopped when Pearson became aware that the plaintiff had taken legal action.

On March 6, 1995, the plaintiff filed a complaint with the

MCAD, charging the defendant with unlawful discrimination based on sexual harassment in violation of G. L. c. 151B, § 4 (1). Her complaint alleged that Arce had created a hostile work environment because of past complaints of discrimination made by her, and that the hostile work environment had continued until December, 1994. In the body of her complaint, the plaintiff specifically referred to the glue incident involving Pearson (described as occurring in September, 1994), and the dream incident involving Cordero (for which the plaintiff did not give an approximate date).[5] On September 13, 1996, a commissioner of the MCAD entered a finding of probable cause on the plaintiff's complaint and determined both that the plaintiff had established a prima facie case of discrimination and that the defendant had established a legitimate nondiscriminatory defense that the conduct alleged did not constitute discrimination.[6]

The plaintiff filed her complaint in the Superior Court on September 23, 1997. Sometime during the same month, Sanchez was standing behind the plaintiff, who was leaning over a table on which some boxes were stacked. Sanchez drew a sketch, which he showed to another worker and then to the plaintiff. To the plaintiff, the drawing appeared to represent a portion of her (unclothed) body. When questioned about the drawing by Alan Goodman, plant manager of the Readville facility, Sanchez denied that he had intended to portray the plaintiff and insisted instead that the drawing was of a dog. Goodman examined the drawing and commented that it looked like a camel or a dog. He ordered that the plaintiff and Sanchez be separated, but took no other action.

With respect to the effects of the workplace experience on the plaintiff, a psychologist, Dr. John Daignault, testified at a deposi-

[5]On the upper part of the complaint form, in the space following "Violation-Date," the plaintiff inserted September 7, 1994. We reject the defendant's assertion that this is the undisputed date of the glue incident, in light of other evidence indicating that the incident occurred on September 14 or 15.

[6]After the plaintiff filed her complaint with the MCAD, the defendant investigated the dream incident by speaking to Cordero, Beggan, and various supervisors. Cordero admitted having told the plaintiff that he had a dream about her and that he thought she was pretty, but denied any conversation of a sexual nature. Cordero was warned of the consequences of sexual harassment, but otherwise not disciplined.

tion that the plaintiff suffers from recurrent major depression and *posttraumatic stress disorder, which, as stated in a written* psychological evaluation, are "directly causally related to persistent episodes of sexual harassment and its sequelae allegedly perpetrated upon her in her workplace." Although Dr. Daignault did not identify a particular incident, or group of incidents, from among all of those related to him by the plaintiff as causing her medical condition, or attempt to pinpoint the time when the plaintiff's condition arose, he rejected the possibility that experiences other than work-related ones might have contributed to the plaintiff's condition.

The record also indicates that the defendant first adopted a written sexual harassment policy in the 1980's. The policy was contained in a corporate policy guide given to upper management, and was posted in work areas such as the break room and employee bulletin boards. The defendant held informal meetings in the late 1980's with groups of employees to discuss its policy on sexual harassment, and conducted training on sexual harassment for all salaried management employees. During the plaintiff's employment, the Readville manufacturing plant had a personnel representative who managed human resource issues, including concerns about workplace harassment. In early 1995, the defendant conducted one-hour meetings with groups of employees and supervisors from the Readville plant, which were prompted, in part, by the plaintiff's allegations, and in which harassment and discrimination issues were discussed.

The defendant moved for summary judgment, asserting that only two of the incidents that the plaintiff alleged (the September, 1994, glue incident involving Pearson and the September, 1997, incident involving Sanchez's drawing) were timely and that these were not sufficiently egregious or pervasive to constitute actionable sexual harassment under G. L. c. 151B. The defendant also argued that the plaintiff's failure to assert the 1997 drawing incident in a complaint to the MCAD barred its consideration. Finally, the defendant asserted that its response to the glue incident protected it from liability for that event, even if that incident standing alone would suffice to constitute sexual harassment.

The judge, in her written memorandum of decision, deter-

mined that only the glue and drawing incidents could be considered as evidence of a hostile work environment. These two incidents, she concluded, did not rise to the level of an actionable claim of sexual harassment. The judge rejected the plaintiff's argument that, because her claim of sexual harassment constituted a continuing violation, the MCAD's six-month statute of limitations for filing a claim as to the earlier incidents was not applicable.[7] Relying on Federal law interpreting the continuing violation doctrine under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 (a)(1) (Title VII), the judge concluded that the plaintiff was barred from asserting the doctrine because the plaintiff's testimony indicated that she was aware that she was the subject of unlawful discrimination while acts prior to the six-month cutoff were taking place. See *Provencher* v. *CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir. 1998); *Sabree* v. *United Bhd. of Carpenters & Joiners, Local No. 33*, 921 F.2d 396, 401 (1st Cir. 1990). The judge concluded that, although the continuing violation doctrine "permit[s] the inclusion of acts whose character as discriminatory was not apparent at the time they occurred," *Speer* v. *Rand McNally*, 123 F.3d 658, 663 (7th Cir. 1997), it does not obviate the general rule that "a knowing plaintiff has an obligation to file promptly or lose his [or her] claim." See *Provencher* v. *CVS Pharmacy, Div. of Melville Corp., supra* at 15.

The judge next considered the evidence of the two incidents of harassment within the statutory limitations period, the 1994 glue incident and the 1997 drawing incident.[8] (The judge apparently did not consider Pearson's wearing of the hat with a

_____

[7] General Laws c. 151B, § 5, requires that "[a]ny complaint filed [with the Massachusetts Commission Against Discrimination (MCAD)] pursuant to this section must be so filed within six months after the alleged act of discrimination." MCAD regulations interpreting this requirement, however, allowed an exception to the six-month limitations period where "the unlawful conduct complained of is of a continuing nature." 804 Code Mass. Regs. § 1.03 (2) (1993).

[8] The judge correctly rejected the defendant's assertion that the drawing incident must be excluded from evidence because it occurred after the plaintiff's filing of her MCAD complaint, and, because the plaintiff did not subsequently amend her complaint to include the incident, she had failed to exhaust her administrative remedies. See *Carter* v. *Commissioner of Correc-*

"Beware" sign as an incident of harassment). She determined that neither incident involved any physical contact, request for sexual favors, vulgar or demeaning language, or threat or intimidation.[9] She concluded that evidence of the two incidents, three years apart, even when considered in the context of what the judge considered to be the earlier time-barred incidents,[10] was insufficient to support the plaintiff's claim of sexual harassment. Based on the reasoning described, the judge granted summary judgment for the defendant.

1. We first consider the effect of the continuing violation doctrine on the statute of limitations governing G. L. c. 151B claims of sexual harassment. Specifically, we inquire whether the plaintiff's awareness that she was being sexually harassed by incidents occurring before September 6, 1994 (the date six months prior to her filing of her complaint with MCAD), bars her from asserting a substantive claim in court based on those incidents. In evaluating the issue, we keep in mind that a defendant seeking summary judgment has the burden of establishing that the plaintiff "has no reasonable expectation of proving an essential element of [her] case." *O'Sullivan* v. *Shaw*, 431 Mass. 201, 203 (2000), quoting *Kourouvacilis* v. *General*

---

*tion*, 43 Mass. App. Ct. 212, 218 (1997); *Smith* v. *Mitre Corp.*, 949 F. Supp. 943, 948 (D. Mass. 1997) (reasoning that, in cases involving allegations of retaliation after an MCAD filing, additional filing would serve only to increase costs and delay final resolution).

[9]General Laws c. 151B, § 1 (18), defines "sexual harassment" as follows:

"The term 'sexual harassment' shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment."

[10]A plaintiff who has a seasonable claim may use events that occurred prior to the six-month limitation period as background evidence to establish a hostile work environment, even though she cannot recover damages for the time-barred events. See *Sabree* v. *United Bhd. of Carpenters & Joiners, Local No. 33*, 921 F.2d 396, 400 n.9 (1st Cir. 1990).

*Motors Corp.*, 410 Mass. 706, 716 (1991). The plaintiff argues that the judge misapplied the continuing violation doctrine and that the six-month limitations period does not preclude a trial on disputed issues of material fact concerning liability and damages. We agree.

General Laws c. 151B, § 5, provides that a complaint alleging sex discrimination is to be filed with the MCAD within six months of the occurrence of the alleged discriminatory event or events.[11] See note 7, *supra*; *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination*, 406 Mass. 515, 520 (1990). The purpose of this requirement is two fold: (1) to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination; and (2) to provide notice to the defendant of potential liability. *Carter* v *Commissioner of Correction*, 43 Mass. App. Ct. 212, 217 (1997). An MCAD regulation interpreting the six-month statute provides that the limitation will not apply when "the unlawful conduct complained of is of a continuing nature." See note 7, *supra*. This exception recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact. "Although the limitations clock generally starts with the commission of a discriminatory act, a true 'continuing violation' rewinds the clock for each discriminatory episode along the way." *Mack* v. *Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 183 (1st Cir. 1989), citing *Velazquez* v. *Chardon*, 736 F.2d 831, 833 (1st Cir. 1984).[12]

Both this court and the Appeals Court have relied on the

---

[11]A case of this type is subject to two statutes of limitations. A claim cannot be brought alleging discrimination under G. L. c. 151B, unless it is preceded by the filing of a complaint of unlawful discrimination with the MCAD within six months of the alleged act or acts of discrimination. G. L. c. 151B, § 5. Thereafter, when certain requirements are met, a plaintiff has three years "after the alleged unlawful practice occurred" to sue in court. G. L. c. 151B, § 9.

[12]Federal decisions distinguish between two types of continuing violations, "serial" and "systemic." See *Carter* v. *Commissioner of Correction*, *supra* at 220. The first type is comprised of an interlinked succession of related events, stemming from a common discriminatory animus, with at least one act of harassment occurring within the limitations period. See *Mack* v. *Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 183 (1st Cir. 1989). The second type focuses on the maintenance of a general practice or policy aimed at members of a

continuing violation doctrine to permit plaintiffs to seek damages, if the alleged events are part of an ongoing pattern of discrimination, and there is a discrete violation within the six-month limitations period to anchor the earlier claims. See *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination, supra*; *Carter* v. *Commissioner of Correction, supra*. See also *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 207-208 (1981) (examining facial validity of MCAD's rule on continuing violations and concluding "there is no literal or functional inconsistency between the [continuing violation] rule and [the six-months limitations period], and . . . the rule merely carries out the scheme or design of [G. L. c. 151B]"). Where there is a determination of a continuing violation within the statutory limitations period, therefore, a complaint with the MCAD is timely filed even though some, or a large portion, of the discriminatory conduct may have taken place more than six months prior to the complaint. This rule allows the MCAD to fulfil its statutory obligation of providing an effective "remedy [for] ongoing discriminatory policies by an employer." *Id.* at 207.

A plaintiff who claims a hostile work environment, as the plaintiff does here, will often have to establish a continuing violation to recover for otherwise time-barred violations. See *O'Rourke* v. *Providence*, 235 F.3d 713, 727 (1st Cir. 2001) ("there is a natural affinity between the hostile work environment theory and the continuing violation doctrine"). A hostile work environment is one that is "pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace." *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987). Incidents of sexual harassment serious enough to create a work environment permeated by abuse typically accumulate over time, and many incidents in

---

protected class of employees. See *Provencher* v. *CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir. 1998). Although the distinction is not necessarily relevant to our opinion, we deal here with a so called serial continuing violation.

isolation may not be serious enough for complaint. See *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). However, when linked together, the seemingly disparate incidents may show a prolonged and compelling pattern of mistreatment that have forced a plaintiff to work under intolerable, sexually offensive, conditions. See *id.* at 23 ("whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances [including] the frequency of the discriminatory conduct"); *Ruffino* v. *State Street Bank & Trust Co.*, 908 F. Supp. 1019, 1038 (D. Mass. 1995) ("hostile environment discrimination typically is not confined to one act, directed at one individual, one time; rather, it is a composite of workplace action and inaction").[13] It is important to note that sexual discrimination based on a hostile work environment is a unitary cause of action based on the cumulative effect of hostile acts over the course of time, not one action based on the sum total of many mutually distinct incidents. See *Vance* v. *Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1511 (11th Cir. 1989). To establish a timely hostile work environment claim of sex discrimination under G. L. c. 151B, a plaintiff must establish that she (in a sexual harassment case the plaintiff is usually a she) was compelled to work in such an environment during her employment. Further, she must show, within the six-month limitation period, the existence of at least one incident of sexual conduct which, standing alone might not necessarily support her claim, but which substantially relates to earlier incidents of abuse, and substantially contributes to the continuation of a hostile work environment, such that the incident anchors all related incidents, thereby making the entirety of the claim for discriminatory conduct timely. This interpretation is consistent with the long-standing application by the MCAD of G. L. c. 151B, § 5, to claims alleging sexual harassment in the work-

---

[13]In leading United States Supreme Court cases where a hostile work environment was successfully claimed under Title VII, the evidence of sexual harassment covered a period of years. See *Faragher* v. *Boca Raton*, 524 U.S. 775, 782 (1998) (five years); *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 19 (1993) (two and one-half years); *Meritor Sav. Bank* v. *Vinson*, 477 U.S. 57, 59-60 (1986) (three years).

place,[14] and with the legislative mandate in G. L. c. 151B, § 9, that the "provisions of this chapter shall be construed liberally" in order to eliminate discriminatory conduct and practices. We have consistently granted deference to MCAD decisions and policies. We continue to do so here because its interpretation and application of the continuing violation doctrine is reasonable and conforms to the agency's statutory directive, contained in G. L. c. 151B, § 3 (5), to "adopt, promulgate, amend, and rescind rules and regulations suitable to carry out the provisions of this chapter." As was stated in *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination, supra* at 523, the MCAD "has been charged with the task of combating discrimination in the Commonwealth and pursuant to its statutory powers, has developed the continuing violation rule to assist in carrying out its legislative mandate." See *Rock* v. *Massachusetts Comm'n Against Discrimination, supra* at 206 ("[t]he primary responsibility to determine the scope of [G. L. c. 151B, § 5] has been entrusted to the MCAD, not to the courts").

The defendant argues that the continuing violation doctrine is not applicable here because the plaintiff admitted in her deposition that she considered the acts of other employees directed at her as sexual harassment at the time the acts occurred.[15] Because most of those acts occurred more than six months prior to the filing of the plaintiff's MCAD complaint, the defendant concludes that her action is time barred. In making this argument, the defendant relies (as did the judge) on Federal decisions, notably several from the United States Court of Appeals

---

[14]For application by the MCAD of the continuing violation doctrine to hostile work environment claims, see, e.g., *Beldo* v. *University of Mass. Boston*, 20 M.D.L.R. 105 (1998); *Olsen* v. *Lenco Indus., Inc.*, 19 M.D.L.R. 176 (1997); *Muise* v. *Credit Exch.*, 17 M.D.L.R. 1684 (1995).

[15]That a plaintiff labels certain acts as "sexual harassment" does not necessarily mean that a plaintiff is aware that she is the victim of "sexual harassment" as defined in G. L. c. 151B. In common parlance, there is a tendency to label any unwanted sexual attention, in any context, as "sexual harassment." For purposes of a hostile work environment claim under the statute, however, "sexual harassment" means conduct of a sexual nature that has the "the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." G. L. c. 151B, § 1 (18). A plaintiff is not aware of her claim until such time as she is aware of "sexual harassment" as defined in the statute.

for the First Circuit (First Circuit) interpreting Title VII. These decisions hold that a continuing violation claim will fail if the plaintiff was, or should have been, aware that she was being unlawfully discriminated against while the earlier acts, now untimely, were taking place. See *Provencher* v. *CVS Pharmacy, Div. of Melville Corp.*, *supra* at 14; *Sabree* v. *United Bhd. of Carpenters & Joiners, Local No. 33*, *supra* at 402. This Federal standard originates in *Berry* v. *Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983), cert. denied, 479 U.S. 868 (1986).[16] If accepted by us, the consequences of the Federal interpretation (which we shall refer to as the "revelatory" standard) is that, once a Massachusetts plaintiff knows, or reasonably should know, that she is being sexually harassed, the six-month limitations clock begins to run, and the plaintiff cannot seek relief if she fails to file a complaint with the MCAD within six months of the date that she knew or should have known that she had a claim of sexual harassment. The most recent decision by the First Circuit applying the continuing violation doctrine, *O'Rourke* v. *Providence*, *supra*, continues the revelatory standard as defined by the *Berry* decision in effect. In determining whether the plaintiff was entitled to the benefit of the continuing violation doctrine to assert otherwise untimely claims, the First Circuit in *O'Rourke* stated that the question was not whether the plaintiff knew that she was being sexually harassed, but rather whether the sheer volume and repetition of "earlier acts [of harassment] were sufficient to put [her] on notice that she had a substantial, actionable claim and should have complained earlier." *Id.* at 731-732. This is the *Berry* test formulated in slightly different terms. See *Galloway* v. *General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996) (plaintiff may base suit on conduct that occurred outside statute of limitations if "conduct could constitute, or be recognized, as actionable harassment only in the light of events

---

[16]The *Berry* case identified three factors to determine the timeliness of a plaintiff's claim: (1) subject matter (whether the alleged acts involve the same type of discrimination); (2) frequency (whether the acts are recurring or more in the nature of isolated incidents); and (3) degree of permanence (whether the acts had the "degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights"). *Berry* v. *Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983), cert. denied, 479 U.S. 868 (1986).

that occurred later, within the period of the statute of limitations").[17]

In construing G. L. c. 151B, we frequently do not follow the reasoning of Federal appellate decisions applying Title VII. See *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination, supra* at 521-522 n.7. We do not do so for several reasons: (1) the existence of material differences between our statutory scheme and the Federal scheme (for example, here, the prohibition against sexual harassment is contained in the black letter text of G. L. c. 151B; no similar text can be found in the provisions of Title VII, but it appears only in a regulation of the Equal Employment Opportunity Commission, see 29 C.F.R. § 1604.11 [a] [2000]); (2) the legislative directive that G. L. c. 151B is to be applied liberally; (3) the express delegation of authority by the Legislature in G. L. c. 151B, § 2, empowering the MCAD to act forcefully to implement the statute in order to eliminate discrimination at root level; and (4) the deference we have afforded to MCAD policies and decisions based on the authority granted the agency by the Legislature (similar recognition is not present with respect to EEOC handling of Title VII matters, see *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 170 n.5 [1978][18]). Examples of our analysis of G. L. c. 151B issues in a manner that differs from

[17]Not all circuits of the United States Court of Appeals have adopted the "revelatory" standard. See *Morgan* v. *National R.R. Passenger Corp.*, 232 F.3d 1008, 1015 (9th Cir. 2000) (declining to adopt litmus test requiring that plaintiff had no notice of claim before applying continuing violation doctrine).

[18]There is no settled standard of judicial deference given to EEOC guidelines interpreting Title VII. See *General Elec. Co.* v. *Gilbert*, 429 U.S. 125, 142 (1976), quoting *Skidmore* v. *General Elec. Co.*, 323 U.S. 134, 140 (1944) (level of deference "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control"). This is because, although Congress has expressly delegated to the EEOC the authority to issue procedural regulations, see 42 U.S.C. § 2000e-12 (a), as well as the power to enforce the statute, see 42 U.S.C. § 2000e-5 (a), it has not given the EEOC the power to issue substantive regulations interpreting the statute. EEOC interpretive guidelines are thus not controlling in Federal courts, and even the usual deference afforded to agency interpretations is lacking with respect to the EEOC guidelines interpreting Title VII. See *EEOC* v. *Arabian Oil Co.*, 499 U.S. 244, 257 (1991); *Greenlees* v. *Eidenmuller Enters., Inc.*, 32 F.3d 197, 200 (5th Cir. 1994); *Col-*

the analysis of analogous issues by the Federal Courts under Title VII may be seen in *Melnychenko* v. *84 Lumber Co.*, 424 Mass. 285, 288 (1997) (sexual harassment not limited to conduct aimed at employee of opposite sex, nor to same-sex conduct when harasser is homosexual); *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 444 (1995) (three-stage order of proof); *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination, supra* at 522-523 (failure to credit teachers forced to resign due to pregnancy with preresignation seniority constitutes discrimination based on sex); *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination, supra* at 163-164 (employer liability for "quid pro quo" harassment indistinguishable from liability for creation of hostile work environment); and *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination, supra* at 167 (exclusion of benefits for pregnancy-related disabilities from comprehensive disability plan constitutes sex discrimination).

We decline to adopt the Federal precedent relied on by the defendant with respect to the application of the continuing violation doctrine to claims of hostile work environment sexual harassment under G. L. c. 151B.[19] As explained above, if the Federal revelatory standard were in force under G. L. c. 151B, a

---

*gan* v. *Fisher Scientific Co.*, 935 F.2d 1407, 1421 n.11 (3d Cir.), cert. denied, 502 U.S. 941 (1991) (stating no need to defer to EEOC, although court "appreciate[d]" having agency's view).

[19] Although not cited by the parties, we are aware that some State appellate courts, in deciding the application of the continuing violation doctrine to claims of sexual harassment, have adopted some version of the Federal "revelatory" standard. See *Lively* v. *Flexible Packaging Ass'n*, 765 A.2d 954, 963-964 (D.C. 2001), citing *Berry* v. *Supervisors of L.S.U.*, *supra* (applying standard "whether the plaintiff was aware of, or at least suspected, discrimination at the time of the earlier, time-barred incidents"); *Ammerman* v. *Board of Educ. of Nicholas County*, 30 S.W.3d 793, 799-800 (Ky. 2000), quoting *Galloway* v. *General Motors Serv. Parts Operation*, 78 F.3d 1164, 1167 (7th Cir. 1996) (adopting test that continuing violation doctrine not applicable when "evident long before the plaintiff finally sued that she was the victim of actionable harassment"); *Spicer* v. *Beaman Bottling Co.*, 937 S.W.2d 884, 890 (Tenn. 1996) (adopting factors of *Berry* v. *Supervisors of L.S.U.*, *supra*, and inquiring whether untimely act had the degree of permanence which "should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate that the continued existence of adverse consequences of the act is to be expected without being dependent on a continuing intent to

plaintiff who fails to file a complaint with the MCAD within six months of first realizing that she has been subjected to sexual harassment that could form the basis for a lawsuit and appears to be of a continuing nature, forfeits her right to allege misconduct. This approach provides a strong incentive for an employee to file a complaint with the MCAD when she first suspects that she may have been a victim of unlawful discrimination. If the employee waits longer than six months to determine whether the harassment will stop, or works with her employer to stop it, or to discover whether the harassment will deteriorate from bad to intolerable, she risks losing her ability to seek legal relief.[20] This result is fair neither to the employee, who may be forced prematurely to choose litigation as a remedy, nor to the employer, who has a legitimate interest in attempting to resolve allegations of harassment short of time-consuming and expensive litigation. Even under the more recent application of the revelatory standard stated by the First Circuit in *O'Rourke* v. *Providence, supra,* a complaint must be filed with the MCAD within six months of the date that a plaintiff has notice that she has a viable claim of discrimination, a date which is intrinsically hard to determine. In our view, the *O'Rourke* decision still fails to recognize fully that an employee who suffers from recurring acts of abusive sexual verbal or physical conduct that, over time, rise to the level of a hostile work environment, may be unable to appreciate the true character and enormity of the discriminatory environment until after it has continued for an appreciable length of time. A hostile work environment constitutes a *pattern of sexual harassment* (these are operative words) that, by its very nature, often is apparent only in hindsight.[21] See *Keeler* v. *Putnam Fiduciary Trust Co.,* 238 F.3d 5, 11-12 (1st Cir. 2001) (recognizing this

discriminate"). In each of these cases, the court reasoned that its State anti-discrimination statute is substantially similar to Title VII. We do not find these opinions persuasive.

[20]As discussed in note 10, *supra,* a plaintiff who has a seasonable claim may, of course, still use other time-barred events as background evidence of a hostile work environment, even though she cannot recover damages for the time-barred events.

[21]Our analysis is limited to circumstances where the alleged sex discrimination due to a hostile work environment is of a continuing nature. It is also possible to have an actionable hostile work environment claim based on a

court might not adopt Federal revelatory standard in cases of ongoing harassment "where pinpricks may only slowly add up to a wound"). Combining that fact with a requirement that a plaintiff precisely ascertain the date on which her situation is legally converted into an actionable hostile work environment, improperly intertwines the substantive law of hostile work environment with the statute of limitations question.

Departure from the Federal analysis for deciding hostile work environment issues under G. L. c. 151B, § 5, does not make the six-month statute of limitations ineffectual. There undoubtedly are circumstances where a pattern of harassment, considered from the viewpoint of a reasonable person in the plaintiff's position, is so sufficiently known, pervasive, and uncorrectable that the plaintiff's delay in filing a seasonable complaint with the MCAD will operate to bar the claim as untimely. The guiding principles to be applied by a judge deciding a motion for summary judgment (based on what a jury might conclude from the facts viewed in the plaintiff's favor and reasonable inferences therefrom, see *Smith* v. *Suburban Restaurants, Inc.,* 374 Mass. 528, 531 [1978]) are these: a plaintiff who demonstrates a pattern of sexual harassment that creates a hostile work environment and that includes conduct within the six-month statute of limitations, may claim the benefit of the continuing violation doctrine and seek damages for conduct that occurred outside the limitations period, unless the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve, and, thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran on that conduct.

Our test differs substantively from the Federal revelatory test, as articulated by the First Circuit in *O'Rourke* v. *Providence, supra* at 731-732. The latter speaks in terms of a plaintiff's "awareness" that she was being discriminated against, and would deny a plaintiff damages for unlawful conduct falling outside of the statute of limitations period if, at the time the conduct occurred, she had notice that she had an actionable

single act of sexual harassment. See *Gnerre* v. *Massachusetts Comm'n Against Discrimination,* 402 Mass. 502, 508-509 (1988).

claim.[22] Our test, more favorable to a plaintiff, focuses on the plaintiff's knowledge of the hopelessness of her work environment, and allows her to litigate alleged, otherwise time-barred, acts of sexual harassment unless her delay in initiating the lawsuit, considered under an objective standard, was unreasonable.

The plaintiff here is entitled to the benefit of the continuing violation doctrine to defeat the defendant's motion for summary judgment. A jury could reasonably find that, in 1991 after Arce was fired, the plaintiff might have felt that her problems would cease. The jury could infer that events after Arce's reinstatement, particularly Sanchez's unwelcome advances, left the plaintiff with the sense that conditions might improve if she kept a low profile. A jury could also reasonably find that the glue incident on September 14 or 15, 1994, accompanied by continuing hostility directed at her, triggered the plaintiff's physical and emotional breakdown and furnished the catalyst for her full comprehension that a pattern of long-standing discrimination existed that was unlikely to be successfully remedied. Thus, the conclusion is reasonable that the plaintiff's complaint on March 6, 1995, to the MCAD properly invoked the continuing violation doctrine.[23]

2. Based on what has been said, there is no question that the plaintiff has set forth a prima facie claim of discrimination based on sexual harassment. It is irrelevant at this stage of the litigation that the plaintiff's version of events is not fully corroborated, or that the defendant can present evidence tending to show that there was no actionable misconduct. The fact that the

---

[22]The Federal "revelatory" standard is analogous to our "discovery rule," under which a cause of action does not accrue for limitations purposes until a plaintiff knew, or should have known, that the defendant's conduct has caused harm. See *Ross* v. *Garabedian*, 433 Mass. 360, 362-363 (2001); *Riley* v. *Presnell*, 409 Mass. 239, 243 (1991).

[23]The defendant raises the argument, for the first time on appeal, that all incidents prior to September 24, 1994, including the glue incident, are untimely under G. L. c. 151B, § 9, because the plaintiff did not file her complaint in the Superior Court until September 24, 1997. In its summary judgment brief, however, the defendant argued that the glue incident was the plaintiff's "one timely allegation." We decline to consider an argument not raised below. See *Still* v. *Commissioner of the Dep't of Employment & Training*, 423 Mass. 805, 808 n.3 (1996).

defendant may have taken appropriate steps to deal with the plaintiff's complaints will have a bearing on the defendant's liability at trial, but is not dispositive on summary judgment. In addition to the conduct directed at the plaintiff, which has been described, other conduct in her workplace may be presented to the jury. "As a matter of settled law and common sense, a hostile environment claim requires consideration of the environment in which a plaintiff works." *Ruffino* v. *State Street Bank & Trust Co.*, 908 F. Supp. 1019, 1038-1039 n.34 (D. Mass. 1995). Thus, acts of sexual harassment directed against others that were known to the plaintiff, and the defendant's failure to discipline anyone for the acts, or effectively to remedy them, may be considered part of the environment in which the plaintiff worked.

The issue of the statute of limitations will be placed again before the jury for their decision under the legal standard set forth above. The jury will first decide whether the plaintiff has shown the existence of a continuing violation that includes conduct occurring within the six months prior to her filing with the MCAD. If the plaintiff has not shown that the conduct within that six months is part of a pattern of sexual harassment that would constitute a continuing violation, then she may not pursue a claim for the earlier conduct on a continuing violation theory. If the plaintiff has shown a continuing violation, the claim for that earlier conduct will only be barred if she knew or reasonably should have known, more than six months prior to her MCAD filing, that her work situation was pervasively hostile and unlikely to improve and, therefore, a reasonable person in her position, armed with her knowledge, would have filed a seasonable complaint with the MCAD. If the jury conclude that the plaintiff has not met this standard, then events prior to the limitations period would be barred as providing a basis for the recovery of damages. The plaintiff would still be allowed to use the time-barred events as background evidence of a hostile work environment, see notes 10 and 20, *supra*, but, if successful in establishing her claim, she could only recover for events occurring within the limitations period. On the other hand, if the jury find that the plaintiff has met the standard stated above, then conduct outside the limitations period would be open to

them for an award of damages. On this record, the plaintiff's case is one to be resolved by a jury. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 127 (1997).

Accordingly, we vacate the grant of summary judgment for the defendant and remand the case to the Superior Court for proceedings consistent with this opinion.

*So ordered.*