Agnes, A.J.
I. Background
This is a motion for summary judgment brought before the court by the defendants, Raytheon Company (“Raytheon”), Robert “Guy” Hoeffer (“Hoeffer”), and Christos “Chris” Brustas (“Brustas”). The plaintiffs, Marlene and Thomas Guthrie (plaintiffs) brought the complaint on five counts: (1) sexual harassment and gender discrimination in violation of G.L.c. 15 IB, §§4(1) and 4(16A); (2) Retaliation in violation of G.L.c. 15IB, §4(4); (3) Aiding and Abetting the previous in violation of G.L.c. 15 IB, §4(5); (4) Intentional Interference with Advantageous/Contractual Employment Relationship; and (5) Loss of Consortium. The first and second counts concern Raytheon Co. as a defendant. Counts Two through Five involve Hoeffer and Brustas, as named defendants. The fifth count is for loss of consortium against Hoeffer and Brustas.
Marlene Guthrie alleges that she was the victim of pervasive abuse by reason of her gender, which created a hostile and demeaning work environment. Plaintiffs allege that Raytheon, through its actions and the actions of its agents, intentionally sexually harassed Marlene Guthrie and discriminated against her on the basis of her gender, and that this conduct is part of a continuing course of conduct dating back to the period 1990-1992. It is further alleged that the plaintiff was targeted for abuse in retaliation for her continued opposition to the previously alleged conduct. Plaintiffs also allege that the acts and omissions of defendants, Hoeffer and Brustas, aided and abetted this harassment and discrimination, and that they intentionally interfered with Ms. Guthrie’s employment relationship with Raytheon. Lastly, it is alleged by plaintiff, Thomas Guthrie, that the actions of defendant’s Hoeffer and Brustas, as previously alleged, interfered with, invaded, and injured his relations with his spouse, Marlene Guthrie.
II. Statement of the Undisputed Material Facts
For the purpose of summary judgment determination, the following facts are considered true, undisputed, and material. The plaintiff, Marlene Guthrie has been working for the defendant, Raytheon Company since 1973. In October of 1990, the plaintiff was transferred to the second shift (“night shift”) in Raytheon’s Environmental Test Laboratory (“ETL”) at the company’s Andover, MA plant. While serving as a lab technician on the night shift, Ms. Guthrie was exposed to conduct which is conceded by Raytheon to be of a sexually harassing nature. This conduct involved the use of pornographic movies and magazines by employees of defendant Raytheon. The plaintiff did not report the conduct, but an investigation was launched when her supervisor, defendant Guy Hoeffer, discovered and reported the incidents to the Labor Relations division of the company. In November of 1991, Ms. Guthrie filed a formal grievance alleging sexual harassment and gender discrimination in violation of her collective bargaining agreement. Following the internal investigation, several of the plaintiffs co-workers were disciplined and Ms. Guthrie was transferred to the day shift. Ms. Guthrie signed a statement indicating that the matter had been resolved to her satisfaction.
From 1992-1997, the plaintiff does not allege that she was subjected to sexual harassment in the manner in which she previously experienced; instead, she alleges that she was exposed to discriminatory conduct that she believes was gender based. Also during this period, Ms. Guthrie alleges she became the victim of a retaliatory campaign for her stated opposition to her co-workers’ treatment of her, as well as her seniority and marital status. The behavior on which the plaintiffs base this allegation includes disparaging remarks, bypassed overtime, exclusion from social events, and un-rewarded work performance. Only one Raytheon employee, Dennis Naffa, who had worked with the plaintiff on the night shift was transferred to the day shift. Mr. Naffa refused to talk with the plaintiff, but did nothing else. The specific incidents that *26 occurred within the six months prior to her MCAD complaint, but before Ms. Guthrie left the ETL are:
1. Brustas bypassed Guthrie for overtime. This was corrected following her grievance (10/29/96).
2. Hoeffer ignored her request for safety shoes. Other employees did not want them. He is said to have made the statement that Ms. Guthrie was “awkward and clumsy” outside of her presence (11-12/96).
3. Outside of Guthrie’s presence, one employee said to another words to the effect, “I have a picture of my toilet," when Guthrie showed her vacation pictures (1/3/97).
4. As Guthrie was leaving for two week leave of absence, two employees yelled comments to the effect, “Hey Marlene, you have two weeks to get your pictures developed,” and “Who cares, nobody missed you, who gives a damn." (1/3/97.)
5. When Guthrie returned from leave, an employee said words to the effect of, “it was nice around here, too and nobody missed you.” (1/22/97.)
6. A supervisor in another department (she was on loan at the time) asked Guthrie about solder certificates, and she informed him hers had expired. Hoeffer saw her later and “screamed” words to the effect of, “I thought you were solder certified. I thought you went to school." (1/31/97.)
7. Guthrie saw Brustas later and teased him that he was in trouble because she had already told him that her solder certificate expired. Another employee then said to Brustas words to the effect of, “I told you she was nothing but trouble.” (1/31/97.)
8. The day after Guthrie had difficulty finding her car in the parking lot, an employee said to other employees that Guthrie was stupid because she could not find her car. (2/7/97.)
9. Guthrie overheard two employees talking to each other, and they were saying that a woman who had been beaten with a bat probably deserved it. (2/13/97.)
Ms. Guthrie alleges that she continually complained about the ongoing harassment, including complaints to another supervisor, defendant Chris Brustas, but that the defendants failed to take action. In 1997, Ms. Guthrie lodged a formal complaint with the union, which was followed by an investigation undertaken by Raytheon. Marlene Guthrie was transferred out of the ETL during this investigation.
Her interactions with co-workers, which she interpreted as hostile, were limited following this transfer. The incidents the plaintiff classifies as problematic prior to her transfer are reflected for the most part in notes taken by a Raytheon Employee Relation’s representative and are contained in the record. These incidents include various instances where Marlene Guthrie believes she was mistreated on account of her gender, but on none of the occasions was Marlene Guthrie the target of sexual harassment of the kind she experienced on the night shift in the ETL.[1] She filed an MCAD complaint on April 16, 1997, and subsequently filed this matter before the court. Ms. Guthrie remains employed at Raytheon and has since been transferred to an area where she is unlikely to interact with former co-workers.
III. Discussion Standards Applicable to a Motion for Summary Judgment
“Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). The function of a motion under Mass.R.Civ.P. 56, is to “pierce the boilerplate of the pleading and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Sup.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Thus, summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Also, summary judgment may be granted against the moving party, and may be granted as to certain issues but not others. See Community Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this burden is established, burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “(t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” Anthony’s Pier Four v. Crandell Dry Dock Engineering, Inc., 396 Mass. 818, 822 (1986), quoting National Ass’n of Gov’t Employees v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). However, “[a] complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, supra at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community National Bank v. *27 Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an essential element of the other party’s claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Count I: Discrimination & Sexual Harassment
Defendant, Raytheon Co. has moved for summary judgment of this count on the basis that the claim is time-barred pursuant to G.L.c. 151B, §5, which states that an employee must file a complaint of discrimination with the MCAD within six months of the alleged discrimination. The plaintiff may pursue a complaint after the six-month period has elapsed under the continuing violation doctrine. See generally Cuddyer v. The Stop & Shop Supermarket Co., 434 Mass. 521 (2001). In order to invoke the doctrine, the plaintiff must show the existence of at least one incident of discriminatory conduct which, standing alone may be insufficient to demonstrate a hostile work environment, but which substantially relates to earlier incidents of abuse. Cuddyer, 434 Mass. 521, 533 (2001). The defendant argues that conduct which amounts to a violation under G.L.c. 151B ended in 1991, about six years prior to the plaintiffs filing of her MCAD complaint. The plaintiff argues that conduct by the defendant through its agents in this period is substantially related to previous behavior (conceded sexual harassment in 1990-1991), and thus forms a continuing violation. This court disagrees.
The undisputed facts which are relevant to this examination demonstrate that conduct in the period following 1991, as well as conduct that occurred in the six months prior to the filing of an MCAD complaint, do not involve sexual harassment, and are not substantially related to earlier conduct which the defendant has conceded was a violation of G.L.c. 15 IB. The gross sexual harassment in which the plaintiff was subject to in 1990-1991 was completely different from later conduct which can be described as juvenile and unwarranted, but not tantamount to a violation. The plaintiff and defendant remedied the situation in 1991 by the plaintiffs transfer to the first shift and the disciplining of wrongdoers by the defendant. The conduct that amounts to a violation ended there; the plaintiff even signing a release that the situation was resolved to her satisfaction. The plaintiffs failure to demonstrate not only actionable conduct within the limitations period, but also a substantial relationship between those incidents and earlier ones, means that this case does not fall under the continuing violation doctrine. See McKearney v. Answer Think Consulting, 2001 WL 417179, at 4, 13 Mass. L. Rptr. 57 (Mass. Super. 2001), citing Sabree v. United Broth. of Carpenters and Joiners, 921 F.2d 396, 401 (1st Cir. 1990).
The latter conduct for which the plaintiff may timely file a claim is not actionable under a hostile work environment theory, see College-Town, Div. Of Interco, Inc. v. Massachusetts Comm’n Against Discrimination, 400 Mass. 156, 162 (1987), nor is it substantially related to the earlier sexual harassment which constitutes an actionable violation (1990-1991). The continuing violation doctrine was meant to benefit a plaintiff who was subject to accumulating incidents serious enough to create a work environment “permeated by abuse”; a plaintiff that could not have reasonably known or foreseen the degradation in the level of comfort of their work environment. See Cuddyer, at 532-33.
The court feels compelled to further comment on the treatment afforded the Continuing Violation Doctrine by the SJC in Cuddyer. The Court in Cuddyer discussed the interest in allowing a plaintiff to pursue claims under the doctrine that would otherwise be barred by the limitation period. See Cuddyer, at 530-36. The interests of justice dictate that a plaintiff subjected to a series of isolated yet related incidents should not be time-barred if the incidents link together to form an intolerable and hostile working environment. See id., at 532-33. The Court, in essence, was rejecting the federal revelatory standard while maintaining a threshold of production which would allow a plaintiff to pursue a claim under G.L.c. 15 IB if the circumstances creating the claim have remained, evolved, or decayed to that of hopelessness or intolerability in the objective sense. See id., at 538-40. By invoking an objective standard, the Court in Cuddyer recognizes the creation of an increasingly plaintiff-friendly standard, but also maintains the continuation of the burden of demonstrating that incidents on which the plaintiff relies to show a continuing violation must be substantially related. This court’s foregoing analysis of the circumstances of the case at bar, are in accordance with the substantive declarations and intentions of the Court in Cuddyer. Therefore, defendant’s motion for summary judgment as to Count I is allowed because those claims are time-barred and plaintiffs timely complaint fails to meet the threshold of a hostile work environment.
Count II: Retaliation
Defendants Raytheon, Hoeffer, and Brustas have moved for summary judgment as to the plaintiffs’ allegation of retaliation in violation of G.L.c. 15 IB, §4(4). Retaliation is a separate and independent cause of action. Abramian v. President & Fellows of Harvard, 432 Mass. 107, 121 (2000). In order to succeed on a claim of retaliation, a plaintiff must prove that she acted reasonably and in good faith believed that the *28 defendant was engaged in wrongful discrimination, that she acted reasonably in response to that belief, and that the defendant’s desire to retaliate against her was a determinative factor in its decision to impose actions which were adverse to her employment. See Tate v. Dept. of Mental Health, 419 Mass. 356, 364 (1995). The plaintiff must establish the basic fact that she was subjected to adverse employment action because of her protected activity. G.L.c. 151B, §4(4); Lewis v. Gillette, Co., 22 F.3d 22, 24 (1st Cir. 1994); College-Town, 400 Mass., at 167. There must also be sufficient evidence that a retaliatory motive played a part in the adverse employment actions alleged. Williams v. Raytheon Co., 220 F.3d 16, 21 (1st Cir. 2000), quoting Lewis, 22 F.3d, at 24.
The moving parties argue that the plaintiff cannot prove that Raytheon took a material adverse action against her. Accordingly, they also argue that plaintiffs allegations of retaliation must fail because there is no evidence of retaliatory motivation. This court is not willing to say that bypassing the plaintiff for overtime pay, albeit corrected, is not a material disadvantage. However, those circumstances along with various other complaints, are not substantial enough to register as the kind of material disadvantage requisite for a finding of unlawful retaliation. See MacCormick v. Boston Edison Co., 423 Mass. 652, 662 (1996) (failure to prove sufficient adverse action is a fatal defect). There is a clear insufficiency of objective evidence in which a jury could find that the plaintiff was materially disadvantaged in respect to salary, grade, or other objective terms of her employment. See id., at 663 (subjective impressions or feelings of disappointment or disillusionment not enough to support claim of retaliation).
Plaintiff has also failed to provide sufficient evidence to show retaliatory animus. The undisputed facts are contrary to tiie plaintiffs allegations of retaliation. Plaintiff offers a report from the union steward and notes from Raytheon’s internal investigation as evidence of the companies retaliation.[2] The report is hearsay from an employee whose relationship to the issues in this case is not defined. The evidence of investigation reports are likewise insufficient to show either the existence of adverse action or retaliatory motive on the part of Raytheon or the individual defendants. The defendant Raytheon, continually attempted to remedy the plaintiffs continuing dissatisfaction through its employee relations department. Raytheon’s agent, defendant Guy Hoeffer brought plaintiffs problems to the attention of the company. By the plaintiffs own statements, Chris Brustas supported her and attempted to correct problems she felt were prevalent. There is no competent evidence of a connection between any adverse action and the plaintiffs discrimination complaints. The defendants’ actions cannot be viewed as derivative of retaliatory motive. See Williams v. Raytheon Co., 220 F.3d at 21 (evidence contrary to retaliation by defendant following exercise of plaintiffs protected rights shown to break causal chain between plaintiffs testimony and his discharge).
Plaintiffs failure to provide sufficient evidence to show a material adverse action, or to show retaliatory animus on the part of the defendants undermine her claim of retaliation pursuant to G.L.c. 151B, §4(4). For those reasons, as well as time-barred claim issues discussed previously, defendants’ motions for summary judgment as to Count II are allowed.
Count III: Aiding and Abetting
A claim of aiding and abetting discrimination, unlike that of retaliation, is entirely dependent upon the continuation of the discrimination and harassment claims of Count I. See Abramian, 432 Mass. at 122 (court ordered new trial on count stating aiding and abetting entirely derivative on discrimination verdict). Because the discrimination and harassment claims of Count I fail, so must this claim. The defendants’ motion for summary judgment as to Count III is allowed.
Count IV: Intentional Interference
The plaintiff has brought this claim against defendants, Hoeffer and Brustas. Defendants contend that the claim is preempted by the Labor Management Relations Act (“LMRA”), 29 U.S.C. §§141 et seq. The LMRA “completely preempts a state law claim if the resolution of that claim necessitates analysis, or substantially depends on the meaning of, a collective bargaining agreement.” Quesnel v. Prudential Ins. Co., 66 F.3d 8, 10 (1st Cir. 1995), citing Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988); Magerer v. John Sexton & Co., 912 F.2d 525, 528 (1st Cir. 1990). Determination of whether the LMRA preempts the plaintiffs state tort law claim turns to examination of the specific elements of the claim.
To succeed on a claim of intentional interference with contractual relations, the plaintiff must prove: (1) she had a .contract with a third party (Raytheon); (2) each defendant knowingly induced the third parly to breach the contract; (3) the defendants’ interference was improper in motive or means; and (4) the plaintiff was harmed by the defendants’ actions. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990). The determination of whether Hoeffer or Brustas induced Raytheon to breach its contract with the plaintiff requires the court to examine the collective bargaining agreement’s protections which the plaintiff uses as a basis for the claim. Proper adjudication of the claim requires interpretation of the agreement. See Magerer, 912 F.2d at 530-31.
Furthermore, it is undisputed that the named defendants were supervisory employees, acting as agents of the plaintiffs employer. It is also undisputed that Raytheon’s conduct was governed by a collective bargaining agreement. As such, the plaintiffs intentional interference claim against the agent of an employer *29 governed by a collective bargaining agreement is preempted by the LMRA. See Magerer, 912 F.2d at 525 (citations omitted).
Accordingly, the defendants’ motion for summary judgment as to Count IV is allowed in so far as the plaintiffs claim is preempted by the LMRA. Because the plaintiff has not brought a cause of action under the LMRA, this count is dismissed.
Count V: Loss of Consortium
Thomas Guthrie instituted this claim against defendants, Guy Hoeffer and Chris Brustas. The defendants, on motion for summary judgment, contend that because plaintiffs’ only common law claim fails, the loss of consortium claim must also fail. This court is inclined to agree.
Recovery based upon a loss of consortium claim depends upon a showing of a tortious act which causes injury to the primary plaintiff. Tauriac v. Polaroid Corp., 716 F.Sup. 672, 673 (D.Mass. 1989); see Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 543-44 (1987) (consortium claim dismissed in employment discrimination case where spouse’s contract and tort claims did not survive); see also Forti v. Massachusetts Institute of Technology, 1995 WL 809498, at 6 (Mass. Super. 1995) (consortium claim fails because spouse’s emotional distress claim did not survive summary judgment). There is no cause of action for loss of consortium based on statutory discrimination claims. Tauriac, 716 F.Sup. at 674. Because Ms. Guthrie’s only tort claim, intentional interference, has been dismissed, this claim must also fail. Defendants’ motion for summary judgment on this count must be allowed.
ORDER
For the above reasons, the defendants’ motions for summary judgment are allowed as to each count of the plaintiffs’ claim. This court, after examination of the continuing violation doctrine, holds that the plaintiff shall not receive the benefit of the doctrine and thus, failed to file a timely claim under G.L.c. 151B. This court also deems those incidents which are within the limitations period fail to show the requisite level of pervasive hostility to proceed under a discrimination or harassment claim. The Retaliation and Aiding and Abetting claims filed under G.L.c. 151B likewise fail for those reasons previously discussed. The plaintiffs’ claim of intentional interference is preempted and accordingly dismissed and finally, the loss of consortium claim fails as a matter of law because the absence of a tortious injury to the primary plaintiff.

Internal Investigation notes taken by representatives of Raytheon are a part of the record, and are consistent with the statement of the undisputed material facts supra.

Union steward report and notes from Raytheon investigation contained in record and offered as opposition to defendants’ motion for summary judgment. Facts and allegations contained within those reports are consistent with the undisputed material facts previously expounded.