HIRAM CLIFTON *vs*. MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY.

No. 02-P-781.

Suffolk. October 20, 2003. - September 30, 2004.

Present: ARMSTRONG, C.J., KAPLAN, & PORADA, JJ.

Further appellate review granted, 443 Mass. 1104 (2005).

*Anti-Discrimination Law,* Race. *Employment,* Discrimination, Retaliation. *Evidence,* Rebuttal. *Limitations, Statute of. Practice, Civil,* Instructions to jury, Interlocutory Appeal, Report. *Damages,* Punitive. *Interest. Judgment,* Interest.

Discussion of the applicability of the continuing violation doctrine set forth in *Cuddyer* v. *Stop & Shop Supermarket Co.,* 434 Mass. 521, 541-542 (2001), to claims of a hostile work environment based on racial discrimination in violation of G. L. c. 151B, § 4(1), and of the statute of limitations applicable to such claims [167-170], as well as of the applicability of the continuing violation doctrine to claims of retaliation in the workplace for complaints about discriminatory acts [174-175].

In a civil action for damages arising from a hostile work environment based on race discrimination and retaliation in violation of G. L. c. 151B, § 4(1), (4), the judge did not err or abuse his discretion in admitting in evidence, for limited purposes, testimony of sexual and racial discrimination suffered by the plaintiff's coworkers and a racist flyer that had been posted on a bulletin board at the plaintiff's place of employment [170-171], or in excluding from evidence reports that had not been proffered or marked for identification [171]; moreover, the judge properly left to the jury the question whether evidence of discriminatory conduct that the plaintiff had suffered more than six months before the plaintiff filed an administrative claim for discrimination was time-barred [171-173].

In a civil action for damages arising from a hostile work environment based on race discrimination and retaliation in violation of G. L. c. 151B, § 4(1), (4), the judge did not impermissibly collapse his instructions defining race discrimination and retaliation [173], nor did he err in using a chalk to indicate the various time periods that the jury could consider in awarding damages [173] or in refusing to give an instruction that did not correctly reflect the law of the Commonwealth [176]; however, although the judge correctly applied the continuing violation rule to the plaintiff's claim of racial discrimination, he failed to instruct the jury that, if the plaintiff proved a continuing violation, the claim for earlier conduct would be barred if the plaintiff knew or reasonably should have known, more than six months prior to his filing an administrative claim, that his work situa-

tion was pervasively hostile and unlikely to improve [173-174]; moreover, although the judge correctly applied the continuing violation doctrine to the plaintiff's retaliation claim under the circumstances of this case, the instructions contained errors regarding the time period in which a violation had to have occurred and the ability of the jury to award damages if they found that found that an incident of retaliation within the applicable limitation period could be perceived as a continuation of prior reprisals [175-176].

No error arose from the fact that the jury rather than the judge in a civil action awarded punitive damages for a hostile work environment based on race discrimination and retaliation in violation of G. L. c. 151B, § 4(1), (4). [176]

In a civil action for damages arising from a hostile work environment based on race discrimination and retaliation in violation of G. L. c. 151B, § 4(1), (4), the judge did not abuse his discretion or err in concluding that a punitive damage award was excessive and should be reduced [176-177]; moreover, while the judge erred in vacating the award of prejudgment and postjudgment interest on compensatory damages [177-178], he correctly denied the plaintiff's request for prejudgment interest on the punitive damages award [178-179].

This court concluded that while Mass.R.Civ.P. 64, as amended, 423 Mass. 1410 (1996), did not permit the judge in a civil action, after entry of separate judgments for compensatory and punitive damages following a jury trial, to file a report of all matters on the issues of liability and damages during the course of the trial, the judge's order allowing a new trial on punitive damages following the plaintiff's rejection of a remittitur of the punitive damages award was properly before this court on report as an interlocutory order. [179]

CIVIL ACTION commenced in the Superior Court Department on May 17, 1995.

The case was tried before *Ralph D. Gants*, J., and was reported by him to the Appeals Court.

*Walter M. Foster* for the defendant.

*Kevin G. Powers* for the plaintiff.

*Marisa Campagna, Theresa Finn-Dever, & James S. Weliky*, for National Employment Lawyers Association, Massachusetts Chapter, amicus curiae, submitted a brief.

PORADA, J. In 1995 Hiram Clifton brought an action in the Superior Court against the Massachusetts Bay Transportation Authority (MBTA) alleging that, because of his race, he was subjected to a hostile work environment, in violation of G. L. c. 151B, § 4(1), and was harassed in retaliation for his complaints about discriminatory acts directed at him, in violation of G. L. c. 151B, § 4(4). A jury returned a special verdict

against the MBTA and awarded Clifton compensatory damages of $500,000 for emotional distress and $5 million in punitive damages.

The MBTA moved for judgment notwithstanding the verdict, a new trial, remittitur of the emotional distress and punitive damage awards, a hearing regarding jury bias, and alteration of the judgment to eliminate any prejudgment or postjudgment interest. Clifton moved to alter the judgment to include prejudgment interest on the punitive damage portion of the award and for reasonable attorney's fees.

In a consolidated memorandum of decision and order on the posttrial motions, the judge allowed the MBTA's request for a remittitur of the punitive damage award, reducing it from $5 million to $500,000; its motion for a new trial as to punitive damages only if Clifton rejected the remittitur; and its motion to alter the judgment to vacate any prejudgment and postjudgment interest on the award for damages for emotional distress. The judge denied the MBTA's remaining posttrial motions. The judge also allowed Clifton's motion for attorney's fees, but denied his motion for an award of prejudgment interest on the punitive damages.

Upon Clifton's rejection of the remittitur of the punitive damage award, the judge filed a report to this court of "all matters decided in the Consolidated Memorandum of Decision and Order on Post-Trial motions, dated February 3, 2000, and all other matters decided on the issues of liability and damages during the course of the trial of this case." As his reason for doing so, the judge stated that "[s]ince this case involves difficult and important legal issues and since the new trial on the issue of punitive damages would be lengthy, this Court finds (and the parties agree) that the interests of justice are better served by having all relevant issues decided by the Appeals Court before the commencement of the trial on punitive damages."

Neither party has challenged the propriety of the report of the entire case including the postjudgment orders. Instead, each party has briefed the case as if the entire case were here on appeal. We, therefore, defer our discussion of the procedural posture of the appeal until after a discussion of the facts and substantive issues raised.

We recite the general background facts, reserving the details concerning the alleged discriminatory acts for our discussion of the particular issues.

The plaintiff, an African-American man, started working for the MBTA as a nighttime track laborer in 1983. He did maintenance work on the subway tracks with a group of approximately ten to twelve other employees. In 1984 he became a trackman at the MBTA's rail shop in the Charlestown section of Boston where he fabricated rails for installation on the MBTA lines. The supervisor in Charlestown was Robert Rooney, a Caucasian man. In 1986 the plaintiff was selected to be a line foreman by Rooney and the manager. He worked in this position until 1988.

The plaintiff relocated to a facility in the Jamaica Plain section of Boston from 1988 to 1991. His immediate supervisor was Jerry Romano, a Caucasian man. In late 1991 he returned to Charlestown as a line foreman and again came under the direct supervision of Rooney. When the general foreman retired, the plaintiff took his turn in the rotational sequence used to fill the position.

The plaintiff filed internal complaints with the MBTA for discriminatory practices in the workplace in 1990 and 1991.[1] He filed complaints with the Massachusetts Commission Against Discrimination (MCAD) in 1993, alleging discrimination, and in 1994, alleging racial harassment and retaliation for his prior complaint against the MBTA. In 1995 the plaintiff withdrew his two MCAD complaints to file the Superior Court action. We turn now to a discussion of the issues raised.

1. *Continuing violation doctrine.* In order to pursue his claims, the plaintiff relies on the application of the continuing violation doctrine now set forth in *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 541-542 (2001), to claims of a hostile work environment based on racial discrimination in violation of G. L. c. 151B, § 4(1). In *Cuddyer*, the Supreme Judicial Court determined that the continuing violation doctrine set forth in the regulations of the MCAD at 804 Code Mass.

---

[1] In the 1990 complaint, Clifton alleged that he was treated differently in the areas of job assignment and oversight because of his race. In the 1991 complaint, he alleged that Rooney did not adhere to the seniority system in selecting a general foreman and discriminated against him in assigning overtime.

Regs. § 1.03(2) (1993)[2] applied to claims of a hostile environment based on sexual harassment. The court further held that if a claimant has shown a continuing violation, the claimant will not be barred from recovering for discriminatory acts occurring six months prior to filing a complaint with the MCAD unless the claimant "knew or reasonably should have known, more than six months prior to her MCAD filing, that her work situation was pervasively hostile and unlikely to improve and, therefore, a reasonable person in her position, armed with her knowledge, would have filed a seasonable complaint with the MCAD." *Id.* at 541.

The MBTA argues that this continuing violation rule is limited to claims of sexual harassment because the definition of "sexual harassment" contained in G. L. c. 151B, § 1(18)(*b*), as appearing in St. 1987, c. 473, § 2, prohibits conduct with the "purpose [of]" as well as the "effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment" and no comparable definition for racial harassment exists in G. L. c. 151B. We disagree.

Unlike "sexual harassment," racial harassment is not defined in G. L. c. 151B. Nevertheless, G. L. c. 151B, § 4(1), states that it is an unlawful practice for an employer because of race "to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment." In deciding the *Cuddyer* case, the Supreme Judicial Court did not base its analysis of the employee's claim on the statutory definition of sexual harassment. Instead, the court gave deference to the MCAD's decisions and its rule making authority. *Cuddyer* v. *Stop & Shop Supermarket Co.,* 434 Mass. at 533-534. The court also observed that, pursuant to G. L. c. 151B, § 9, "the provisions of this chapter [151B] are to be construed liberally" in

---

[2]The regulation provided: "The complaint may be filed . . . at any time within six months after the alleged unlawful conduct; provided, however, that the six month requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature . . . ." The current regulatory exception for continuing violations appears at 804 Code Mass. Regs. § 1.10(2) (2002). See *Ocean Spray Cranberries, Inc.* v. *Massachusetts Commn. Against Discrimination,* 441 Mass. 632, 642 & n.12 (2004).

order to eliminate discriminatory conduct. *Ibid.*, quoting from G. L. c. 151B, § 9.

The MCAD has consistently applied the continuing violation rule to claims of hostile work environment based on racial discrimination, see *Beldo* v. *University of Mass. Boston*, 20 Mass. Discrimination L. Rep. 105, 111 (1998), in addition to claims based on sex discrimination, *Nassab* v. *Massachusetts Gen. Hosp.*, 25 Mass. Discrimination L. Rep. 429, 440 (2003). The underpinnings of the continuing violation doctrine set forth in *Cuddyer* support its application to hostile work environment claims based on racial discrimination. If there had been any doubt about the applicability of this rule to claims of racial discrimination, it was dispelled by *Ocean Spray Cranberries, Inc.* v. *Massachusetts Commn. Against Discrimination*, 441 Mass. 632, 642 (2004), in which the Supreme Judicial Court applied the *Cuddyer* rule to a claim of handicap discrimination. Just as the prohibition against racial discrimination does not parrot the defining discriminatory conduct language for claims of sexual harassment, G. L. c. 151B, § 4(16), simply prohibits an employer from discriminating against a "handicapped" person. *Ibid.* It strains credulity to suggest that the Supreme Judicial Court would not apply the continuing violation doctrine to a claim based on racial discrimination.

Here, the judge did not have the benefit of the *Cuddyer* decision at the time of the trial. He nevertheless applied the continuing violation rule set forth in the regulations of the MCAD. See note 2, *supra*. He did not err in instructing the jury in accordance with the regulation, but, as we will discuss in the subsequent section on jury instructions, his application of the continuing violation doctrine was incomplete. See part 3, *infra*.[3]

The defendant also argues that Clifton's claims for damages under the continuing violation rule are confined to the three-year limitation period set forth in G. L. c. 260, § 5B, or G. L.

[3]The MBTA has also argued that Clifton's 1993 MCAD complaint did not set forth specific facts to support a continuing violation. While we agree that the 1993 MCAD complaint may have been deficient, the 1994 MCAD complaint is sufficient to support a continuing violation claim for both discrimination and retaliation.

151B, § 9. The statute of limitations applicable to Clifton's case is set forth at G. L. c. 151B, § 9. The MBTA's argument is foreclosed by our decision in *Carter* v. *Commissioner of Correction*, 43 Mass. App. Ct. 212, 222 (1997). As we pointed out in *Carter*, "[i]t would be anomalous to recognize the applicability of the continuing violation rule in respect to § 5 while precluding its application to § 9." *Ibid.*

2. *Evidentiary rulings.* The MBTA next argues that the judge committed a number of evidentiary errors. At trial, evidence of sexual harassment of one of Clifton's coworkers was introduced in evidence during the cross-examination of witnesses for the MBTA. The evidence was introduced to rebut testimony of those witnesses who testified that the tension in Clifton's working environment in 1994 was caused solely by budget constraints and fear of privatization. The judge limited the scope of the questioning to the specific rebuttal of that testimony. The judge did not abuse his considerable discretion, see *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 477 (1991), in allowing this evidence to be admitted for this purpose.

The MBTA next argues that the judge erred in allowing testimony regarding racial discrimination suffered by Clifton's coworker Craig Dias. Dias worked in the Charlestown yard for a short period and visited the yard from time to time thereafter in his work assignments. He relayed to Clifton that he had been the subject of racially discriminatory remarks and conduct. Acts of harassment directed against others that are known to a plaintiff, and the defendant's failure to discipline anyone for those acts or effectively to remedy them, may be considered as part of the environment in which the plaintiff worked. *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. at 541. The judge specifically instructed the jury that Dias's testimony was relevant only to the degree that what happened to Dias was made known to Clifton and thus formed part of the alleged hostile environment in which Clifton worked at the MBTA. There was no error in the admission of this evidence for this limited purpose.

The plaintiff was allowed to introduce in evidence a racist flyer posted on the MBTA bulletin board in the Charlestown yard. The flyer was entitled "Application for Employment to

Jesse Jackson's Staff" and contained questions such as "Yo' Daddies name (if known)"; "Length of Last Jail Term"; and "How Fast Can Yo' Steal & Strip a Car." The MBTA did not object to Clifton's testimony about the flyer but objected to the admissibility of the flyer on the ground the flyer was not properly authenticated and its prejudicial effect outweighed its relevancy. Clifton testified that he had shown the flyer to his superiors but that no action was taken about it. The judge ruled correctly that the failure to identify who posted the flyer went to the weight of the evidence and not to its admissibility. The flyer was relevant to paint a picture of Clifton's workplace and the reaction of his superiors. There was no error in its admission.

The MBTA also challenges the exclusion from evidence of incident reports of fellow MBTA workers that were allegedly relevant to explain adverse employment actions taken by the MBTA against Clifton. The record does not disclose that those documents were proffered in evidence or marked for identification. Nor does it appear a proper foundation was laid for their admissibility. There was no error in excluding them.

The defendant also contends that the judge erred in allowing the jury to consider evidence of discriminatory conduct prior to the six months that Clifton filed his first claim with the MCAD for discrimination on April 20, 1993, on the ground that Clifton knew or should have known that he was being discriminated against because of his race and had knowledge that his working environment was unlikely to improve. The judge instructed the jury that they could consider evidence of discriminatory conduct prior to October 20, 1992, the date on which the six-month statute of limitations began to run, if they found that the defendant was subjected to a hostile work environment that continued into the limitation period. He further instructed that the discriminatory acts would have to have been of a continuing nature, which he defined as "similar to or reasonably related to the discrimination complained about to the MCAD," but not earlier than July of 1986, the date on which Clifton was appointed to a foreman's position, in assessing damages. (See discussion in part 3, *infra*.)

The MBTA argues that this formulation was error because Clifton himself testified that after he became the first black

foreman in the Charlestown yard in July, 1986, working conditions became so intolerable that he requested a transfer out of the yard in 1988. The MBTA points to Clifton's testimony that during this period racial epithets like "Sanford & Son" were consistently sprayed on his locker; the men on his crew frequently threw firecrackers over the stall door when he used the bathroom or sprayed the door with a water hose; his superiors would rig up a cup of water over their office door and call Clifton in for a fake meeting to watch the water spill on him; and his complaints to his supervisors about this conduct went unheeded as illustrative of Clifton's awareness and knowledge that he was being discriminated against. The MBTA argues that Clifton should also have known at the time of his transfer out of the Charlestown yard in 1988 that his working conditions were unlikely to improve because, although he had a new immediate supervisor, according to Clifton's testimony, his superiors continued to display discriminatory animus to him by calling him "Roxbury man," "Sanford," and referring to Clifton and another black employee as "ding and dong"; failing to follow established seniority practices when it would have benefited Clifton; and giving him more stringent supervision, harsher discipline, and fewer working privileges than his white counterparts. There was also evidence that in 1990 and 1991 Clifton filed complaints with the MBTA's equal employment opportunity office about the discriminatory treatment of him, but nothing was done to remedy the situation.

Although we agree with the MBTA that this evidence presents a serious question whether the discriminatory acts prior to the six-month limitation period are time-barred, we are of the opinion that this is a factual issue that should be determined by a jury. See *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. at 541. A jury could well find, on the evidence presented, that Clifton believed that a change of supervisors, coworkers, and scene, as well as his attempt to address his complaints internally through the MBTA's equal employment opportunity office, would improve his working environment and that his delay in filing a complaint with the MCAD was not unreasonable. *Id.* at 538-540.

Contrary to the MBTA's argument, even if those incidents

were time-barred, a plaintiff who has a seasonable claim based on a hostile work environment may introduce evidence of events that occurred prior to the six-month limitation period as background evidence even though he or she may not recover damages for those events. *Id.* at 541. *Ocean Spray Cranberries, Inc.* v. *Massachusetts Commn. Against Discrimination*, 441 Mass. at 647.[4]

3. *Jury instructions.* The MBTA challenges several of the judge's instructions. The MBTA argues that the judge impermissibly collapsed his instructions defining race discrimination and retaliation. This claim is refuted by the special verdict form which separated the two claims and the judge's pointed instructions which clearly set out the elements for claims based on discrimination and retaliation.

The MBTA also argues that the judge committed reversible error in his use of an anchor diagram[5] to indicate the various time periods that could be considered by the jury in awarding damages. A judge has considerable discretion in his use of chalks. See *Commonwealth* v. *Walker*, 10 Mass. App. Ct. 255, 264 (1980). The continuing violation doctrine could well have been confusing for the jury, and the judge was justified in employing the anchor diagram as a "useful nonprejudicial aid." *Ibid.* However, we believe the anchoring period for retaliation needs to be adjusted. See discussion of the retaliation claim, *infra.*

Although we have determined that the judge correctly applied the continuing violation rule as set forth in the MCAD regulation at the time of trial to the plaintiff's claim of racial discrimination, he failed to instruct the jury that, if Clifton had proved a continuing violation, the claim for the earlier conduct would be barred if Clifton "knew or reasonably should have known, more than six months prior to his MCAD filing, that [his] work situation was pervasively hostile and unlikely to improve and, therefore, a reasonable person in [his] position armed with [his] knowledge, would have filed a seasonable

---

[4]An instruction to this effect was not given to the jury, and in the event of a new trial, it should be included in the judge's instructions if applicable.

[5]In a cause of action based on a continuing violation, the claimant "must show, within the six-month limitation period, the existence of at least one incident . . . that . . . anchors all related incidents . . . ." *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. at 533.

complaint with the MCAD." *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. at 541. Because of this omission his instructions were flawed.

Although the MBTA did not have the benefit of the *Cuddyer* case at the time of trial, it did object to the judge's failure to give an instruction that complied with the Federal revelatory standard[6] set forth in *Provencher* v. *CVS Pharmacy Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir. 1998), that the plaintiff could not recover for any discriminatory acts that occurred six months prior to his filing his complaint if the plaintiff was, or should have been, aware that he was being unlawfully discriminated against while the earlier acts, outside the limitation period, were taking place.[7] The Supreme Judicial Court rejected the Federal revelatory standard in *Cuddyer.* The court noted that, under the Federal standard, claims falling outside the statute of limitations would be barred if the claimant was aware that he or she was being discriminated against. Under the *Cuddyer* standard, for the claims to be considered untimely, the claimant must not only be aware that his or her work situation is pervasively hostile, but have knowledge that it is unlikely to improve and that the delay in filing a complaint with the MCAD or the Federal Equal Employment Opportunity Commission is unreasonable. *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. at 540. Although the MBTA's objection may not have technically preserved the error because it was based solely on the Federal revelatory standard, we need not decide whether its preservation of this issue was sufficient because of the result we reach allowing a new trial. See part 4, *infra.*

The MBTA also argues that the judge erred in applying the

---

[6]The judge, in ruling on the motion for judgment notwithstanding the verdict, opined that if he was wrong about declining to give an instruction on the Federal revelatory standard, the defendant would be entitled to a new trial.

[7]The United States Supreme Court subsequently rejected this standard in *National R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 117-118 (2002), holding that where a claim is based on a hostile work environment, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq. (2000), requires only that the plaintiff file a charge within a certain number of days after the unlawful practice. The plaintiff may recover for the entire time period of the hostile work environment provided that an act contributing to the claim occurs within the filing period. *Ibid.*

continuing violation doctrine to Clifton's claim of retaliation. Although we have intimated that the continuing violation rule set forth in the MCAD regulation applies to claims of retaliation, see *Carter* v. *Commissioner of Correction*, 43 Mass. App. Ct. at 221-222, and the MCAD appears to have considered it applicable to claims of retaliation,[8] see *MacNeal* v. *Boston Pub. Sch.*, 25 Mass. Discrimination L. Rep. 132, 136 (2002), no appellate decision has yet determined that the continuing violation doctrine enunciated in *Cuddyer* applies to claims of retaliation. See *Mole* v. *University of Mass.*, 442 Mass. 582, 596 n.15 (2004). The judge did not err in applying the continuing violation doctrine to the retaliation claim in this case because the plaintiff's evidence disclosed a series of arguably retaliatory incidents constituting a pattern of retaliation throughout Clifton's employment, both within the limitation period and preceding it, and emanating from substantially the same source. Just as in the case of a discrimination claim based on a hostile work environment, an employee may be "unable to appreciate that he is [the object of retaliation] until he has lived through a series of acts and is thereby able to perceive the overall [retaliatory] pattern." *Sabree* v. *United Bhd. of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 402 (1st Cir. 1990).

Nevertheless, the judge's instructions were flawed in several respects. In order for the continuing violation doctrine to apply, there must be some timely violation to anchor the earlier claims. Here, the judge instructed the jury that the anchoring period commenced on April 20, 1993, the date on which Clifton filed his first complaint with the MCAD based on racial discrimination. While the date of April 20, 1993, was relevant in determining whether any alleged retaliatory act that followed thereafter was causally related to the filing of this complaint and the jury should have been so instructed, see *Mole* v. *University of Mass.*, 442 Mass. at 595-596, it was not the date on which the applicable six-month limitation period would have commenced under G. L. c. 151B, § 5. Clifton did not file his claim of retaliation with the MCAD until February 22, 1994. Therefore the applicable anchoring six-month period for the

---

[8]The regulation, by its terms, is not confined to hostile work environment claims. See note 2, *supra*.

retaliation claim would have commenced on August 22, 1993, not April 20, 1993. See *id.* at 596 n.15. Further, the jury should have been instructed that if they found an incident of retaliation within the applicable limitation period that could be perceived as a continuation of prior reprisals, the jury would be justified in awarding damages for those prior acts, but only if the act or acts outside the six-month limitation period did not trigger Clifton's awareness and duty to assert his rights and the delay in his filing a complaint with MCAD was reasonable in the circumstances presented. *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. at 539.

Finally, the MBTA challenges the judge's failure to give its requested instruction that the plaintiff may not prevail if the MBTA has presented credible evidence that (1) the MBTA exercised reasonable care to prevent and promptly correct racially harassing behavior; and (2) the plaintiff failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. The MBTA did not object to the judge's failure to give this instruction so it did not preserve the error. In any event, the judge's refusal was proper because the requested instruction does not correctly reflect the law of the Commonwealth. An employer may be held liable for harassing conduct of its supervisors without a prior complaint by the employee to the employer. *College Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. 156, 165 n.5, 167 (1987).

4. *Punitive damages.* Both parties raise arguments regarding punitive damages. The MBTA contends that G. L. c. 151B, § 9, requires that the judge, not the jury, award punitive damages. G. L. c. 151B, § 9, as inserted by St. 1989, c. 722, § 31, provides in pertinent part: "If the court finds for the petitioner, it may award the petitioner actual and punitive damages." It is a well-established principle that a jury may assess punitive damages under G. L. c. 151B, § 9. *Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220, 226 (1994). *Stonehill College* v. *Massachusetts Commn. Against Discrimination*, 441 Mass. 549, 560 (2004).

Clifton argues that the judge erred in remitting the damages and ordering a new trial on punitive damages. A judge has the power to grant a new trial and to limit the same to the issue of

punitive damages. See *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 826 (1997). In deciding whether a punitive damage award is excessive, the United States Supreme Court stated that any ratio of punitive damages to compensatory damages which exceeds a single digit will not probably pass muster under the due process clause of the Fourteenth Amendment to the United States Constitution. *State Farm Mut. Auto. Ins. Co.* v. *Campbell*, 538 U.S. 408, 425 (2003). See *Borne* v. *Haverhill Golf & Country Club, Inc.*, 58 Mass. App. Ct. 306, 322-323 (2003). Here the ratio does exceed a single digit, but in the final analysis, whether the award is excessive will depend upon the factors enumerated in *Labonte* v. *Hutchins & Wheeler*, 424 Mass. at 826. In reducing the punitive damage award from $5 million to $500,000, the judge carefully considered a number of those factors, namely, the defendant's financial position, the absence of any difference between the actual harm suffered by the plaintiff and the harm that he was likely to suffer in the future from the defendant's conduct, and the absence of any financial benefit to the MBTA from its unlawful conduct. The judge also noted that while there was ample evidence of the reprehensibility of the defendant's conduct, there was meager evidence about the current practices of the MBTA toward minority employees or the financial condition of the MBTA. Upon our review of his analysis of the necessity to reduce the award, we cannot say the judge abused his discretion or erred in concluding that the punitive damage award was excessive and should be reduced.

We are of the opinion, however, that because the judge's instructions were flawed on the substantive issues that affect liability and compensatory damages in this case, and because a new trial on punitive damages will of necessity result in the repetition of much of the same evidence presented on this issue, a new trial is warranted on both liability and compensatory and punitive damages.[9]

5. *Prejudgment and postjudgment interest.* Clifton argues that

[9]Because we conclude that a new trial is warranted and because neither party has addressed the judge's denial of the MBTA's motion for judgment notwithstanding the verdict, we need not dwell on the judge's denial of that motion. We are of the opinion that the judge properly denied the motion, for

the judge erred in vacating the award of prejudgment and post-judgment interest on compensatory damages and in failing to award prejudgment interest on punitive damages. In vacating the award of prejudgment and postjudgment interest, the judge based his ruling on the ground that the MBTA is an instrumentality of the Commonwealth and, as such, enjoys sovereign immunity. See *Onofrio* v. *Department of Mental Health*, 411 Mass. 657, 658 (1992) (Massachusetts Tort Claims Act does not authorize interest against the Commonwealth); *City of Salem* v. *Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. 627, 646 (G. L. c.151B does not authorize interest against a municipality).

While it is true that the MBTA was established as "a body politic and corporate and a political subdivision of the [C]ommonwealth," see G. L. c. 161A, § 2, as appearing in St. 1999, c. 127, § 151, it is an entity financially independent from the Commonwealth with a separate corporate existence. *Massachusetts Bay Transp. Authy.* v. *Labor Relations Commn.*, 425 Mass. 253, 254 (1997). It has been likened to the Massachusetts Turnpike Authority which is also a body politic that has a corporate existence separate from the Commonwealth to which governmental and sovereign immunity do not apply. *Karlin* v. *Massachusetts Turnpike Authy.*, 399 Mass. 765, 766-767 (1987). The MBTA's tort liability is not defined by G. L. c. 258, but by a separate statute, G. L. c. 161A, § 38, which provides that the MBTA shall be liable in tort in the same manner as though it were a street railway company and sets no cap on the amount of damages recoverable. *Magaw* v. *Massachusetts Bay Transp. Authy.*, 21 Mass. App. Ct. 129, 136 (1985). Because a street railway company would be liable for prejudgment and postjudgment interest, the MBTA should be held similarly liable. See *Mirageas* v. *Massachusetts Bay Transp. Authy.*, 391 Mass. 815, 819-821 (1984) (award of interest on a judgment for damages in a tort action affirmed).

Clifton also argues that he was entitled to prejudgment interest on the punitive damage award. The judge was correct in denying this request. *McEvoy Travel Bureau, Inc.* v. *Northon*

there was sufficient evidence presented to the jury to support its findings as noted by the judge in his memorandum of decision.

*Co.*, 408 Mass. 704, 717 n.9 (1990). *Nardone* v. *Patrick Motor Sales, Inc.*, 46 Mass. App. Ct. 452, 454 (1999). Punitive damages are intended to punish the defendant for his wrongdoing and to act as a deterrent to future wrongdoing. They are not compensatory in nature and play no role in restoring to the plaintiff what was rightly his. *Ibid.* Thus, there is no purpose to be served by awarding interest on such awards.

6. *Procedural posture.* We turn now to address the procedural posture of this case. A Superior Court judge may report a case in three situations: "(1) after jury verdict or finding of fact[s] by a judge; (2) in connection with an interlocutory finding or order by the judge which so affects the merits of the case or controversy that interlocutory review by report is appropriate; and (3) on the request of the parties when all material facts have been agreed to in writing, without any decision by the judge." *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 610 n.1 (1993), citing Mass.R.Civ.P. 64, as amended, 423 Mass. 1410 (1996), and G. L. c. 231, § 111. Here, upon return of the verdict, the judge entered separate judgments for compensatory damages and punitive damages. Rule 64 does not provide for a report after judgment. *Alberts* v. *Devine*, 395 Mass. 59, 64, cert. denied sub nom. *Carroll* v. *Alberts*, 474 U.S. 1013 (1985). Presumably, the rationale for this rule is that the parties can appeal from a judgment. However, because the judge allowed the MBTA's motion for a new trial limited to punitive damages, the judge's rulings and orders were not immediately reviewable because no final judgment had entered.

We are of the opinion that the judge's order allowing a new trial on punitive damages is properly before us on report as an interlocutory order, see *D'Annolfo* v. *Stoneham Hous. Authy.*, 375 Mass. 650, 659-660 n.8 (1978), that so affects the merits of the case and controversy that "interlocutory review by report is appropriate." Mass.R.Civ.P. 64. Our review of that order required us to determine whether a new trial is warranted and whether it should be limited to punitive damages or should also embrace the issues of liability and compensatory damages. All the substantive issues raised by the parties fell under the umbrella of that review and thus were considered by us on report.

*Conclusion.* In sum, a new trial should not be limited solely to punitive damages, but should be granted both on liability and damages. Prejudgment interest and postjudgment interest should be awarded on any judgment for damages recovered by Clifton but not on the recovery of any prejudgment punitive damages. The continuing violation doctrine, set forth in *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, applies to Clifton's claims for discrimination and retaliation. The continuing violation rule applies to the statute of limitations set forth in G. L. c. 151B, § 9. The judge did not err in allowing the jury to hear evidence of Clifton's claims of discrimination and retaliation that occurred prior to the commencement of the six-month limitation period set forth in G. L. c. 151B, § 9, in order to determine if those claims were part of a continuation of the hostile work environment claim and continuing retaliation for Clifton's complaints about discrimination and as background evidence for the acts that occurred within the limitation period. The remaining objections to the judge's instructions fail. The evidentiary objections raised by the MBTA are not meritorious. A jury may properly award punitive damages.

The order granting the motion for new trial shall be modified to include a new trial on liability and compensatory as well as punitive damages. The matter is remanded for entry of that order and for further proceedings consistent with this opinion.

*So ordered.*