HIRAM CLIFTON *vs.* MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY.

Suffolk. November 8, 2005. - December 21, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Anti-Discrimination Law,* Race. *Employment,* Discrimination, Retaliation.
*Practice, Civil,* Instructions to jury, Attorney's fees. *Damages,* Remittitur,
Punitive.

This court concluded that the continuing violation doctrine applied to a claim
of unlawful retaliation in the workplace for complaints about discrimina-
tory acts, in violation of G. L. c. 151B, § 4 (4) [616-617], and that the
Superior Court judge hearing the claim used the proper date to anchor
retaliatory conduct alleged by the plaintiff, which would otherwise have
been untimely, to the six-month limitations period authorized by G. L.
c. 151B, § 5 [617-618].

The court concluded that in the context of a trial on a complaint alleging
discrimination in employment on the basis of race, in violation of G. L.
c. 151B, § 4 (1), the defendant was entitled to the benefit of the jury
instruction on the standard enunciated by this court in *Cuddyer* v. *Stop &
Shop Supermarket Co.*, 434 Mass. 521, 541-542 (2001), two years after
trial, for determining whether past discriminatory conduct was actionable
as a continuing violation; where the trial judge had failed to so instruct,
and where the defendant's liability had been conclusively proved, this
court remanded the case to Superior Court for a new trial on the amount of
compensatory and punitive damages to be awarded to the plaintiff.
[618-622]

Discussion of the scope of a trial judge's broad discretion when acting on a
motion for remittitur of punitive damages under Mass. R. Civ. P. 59 (a),
365 Mass. 827 (1974). [623-624]

CIVIL ACTION commenced in the Superior Court Department on
May 17, 1995.

The case was tried before *Ralph D. Gants*, J., and after he
ordered a new trial on the issue of punitive damages, the case
was reported by him. After review by the Appeals Court, the
Supreme Judicial Court granted leave to obtain further appellate
review.

*Kevin G. Powers* (*Robert S. Mantell* with him) for the
plaintiff.

*Walter M. Foster* (*Matthew J. Walko* with him) for the defendant.

The following submitted briefs for amici curiae:

*Marisa Campagna, Theresa Finn-Dever, & James S. Weliky* for National Employment Lawyers Association.

*Paul H. Merry & Angela Ciccolo* for Massachusetts Employment Lawyers Association & another.

GREANEY, J. In 1999, a jury in the Superior Court found that the Massachusetts Bay Transportation Authority (MBTA) had discriminated against the plaintiff in his employment on the basis of his race, in violation of G. L. c. 151B, § 4 (1) and (4), and awarded him $500,000 in compensatory damages for emotional distress and $5 million in punitive damages. After the plaintiff refused to accept a remittitur of the punitive damages award to $500,000, the trial judge ordered a new trial on the issue of punitive damages and reported the entire case to the Appeals Court. The Appeals Court modified the judge's order to include a new trial on liability and on compensatory as well as punitive damages. See *Clifton* v. *Massachusetts Bay Transp. Auth.*, 62 Mass. App. Ct. 164, 180 (2004). We granted the plaintiff's application for further appellate review limited to consideration of (1) whether the "continuing violation" doctrine has any application to a claim of retaliation; if so, (2) whether the judge used the proper date to anchor retaliatory conduct alleged by the plaintiff that would otherwise be untimely to the six-month limitations period authorized by G. L. c. 151B, § 5[1]; (3) whether the MBTA is entitled to a jury instruction on the standard enunciated by this court in *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 541-542 (2001), two years after trial, for determining whether past discriminatory conduct is actionable as a continuing violation[2]; and (4) whether the judge abused his discretion in entering an order requiring the

___

[1]The Legislature has since extended the limitations period from six months to 300 days. See St. 2002, c. 223, § 1.

[2]That standard is as follows:

"The jury will first decide whether the plaintiff has shown the existence of a continuing violation that includes conduct occurring within the six months prior to her filing with the [Massachusetts Commission Against Discrimination (MCAD)]. If the plaintiff has not shown that the conduct within that six months is part of a pattern of sexual harassment that would constitute a

plaintiff to accept either a remittitur on the punitive damages award or a new trial on punitive damages. We conclude that the plaintiff has conclusively established liability on the part of the MBTA on his hostile work environment and unlawful retaliation claims. Because we further conclude, however, that the MBTA is entitled to the benefit of the *Cuddyer* instruction, there must be a new trial on the amount of compensatory and punitive damages to be awarded.

We need not detail the facts that could have been found by the jury. It suffices to say that the evidence at trial demonstrated a pattern of egregious racial harassment and retaliation, perpetrated on the plaintiff (who is African-American) by both supervisors and coworkers throughout nine years of his employment in the engineering and maintenance department at the MBTA. We relate but a few examples, beginning in 1986, when the plaintiff became the first African-American foreman in the MBTA's Charlestown yard. Another foreman at that time, Philip Chisholm, and others shot bottle rockets at him, turned the lights off when he used the bathroom, sprayed water at him through fire hoses, dropped firecrackers near him, set water boobytraps that would fall on him when he opened his office door, and painted "fag bait" and "Sanford and Son" on his locker. When the plaintiff complained to his supervisor, Robert Rooney, Rooney called the plaintiff a "rat." Rooney himself soon joined in the harassment, calling the plaintiff "Roxbury

---

continuing violation, then she may not pursue a claim for the earlier conduct on a continuing violation theory. If the plaintiff has shown a continuing violation, the claim for the earlier conduct will only be barred if she knew or reasonably should have known, more than six months prior to her MCAD filing, that her work situation was pervasively hostile and unlikely to improve and, therefore, a reasonable person in her position, armed with her knowledge, would have filed a seasonable complaint with the MCAD. If the jury conclude that the plaintiff has not met this standard, then events prior to the limitations period will be barred as providing a basis for the recovery of damages. The plaintiff would still be allowed to use the time-barred events as background evidence of a hostile work environment, . . . but, if successful in establishing her claim, she could only recover for events occurring within the limitations period. On the other hand, if the jury find that the plaintiff has met the standard stated above, then conduct outside the limitations period would be open to them for an award of damages."

*Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 541-542 (2001).

Mayor," "fucking banana," and "Sanford," and referring to the plaintiff and another black employee as "ding and dong."

In 1988, in order to escape the harassment, the plaintiff requested, and received, a transfer to become foreman of an MBTA landscaping crew. The unlawful behavior directed toward him by his colleagues did not cease. The conduct often took the form of enforcing rules against the plaintiff that were not applied to other supervisors. The plaintiff perceived that rules extending preferences for filling job vacancies constantly changed, to his detriment, and to the benefit of, other foremen who were white. After 1992, the plaintiff was involved in a series of work disputes in which he was treated unfairly. The plaintiff became aware of several instances of discriminatory conduct, including the use of racist epithets such as "nigger" and "colored boy," directed toward other MBTA employees who also were African-American. In 1992, Chisholm placed a photograph of an African-American woman (who resembled the plaintiff's wife) on a flyer, with words indicating that the woman was available for sexual services, and listing the plaintiff's pager number. Chisholm transmitted this flyer by facsimile to other MBTA offices.

The plaintiff initially complained about the derogatory and unlawful conduct to his immediate supervisors, but they did nothing to stop it.[3] In early 1990, the plaintiff brought his complaints to the MBTA's equal employment opportunity (EEO) office and, later that year, filed the first of what became a series of internal EEO complaints. The EEO office failed to investigate the complaints and made no written findings of fact with regard to them. One senior MBTA manager told the plaintiff that he would be considered for promotion if only he stopped filing complaints. Throughout the time period described above, the plaintiff remained (and still remains) an employee of the MBTA.

On April 20, 1993, the plaintiff filed a charge with the Massachusetts Commission Against Discrimination (MCAD) alleging racial discrimination. On February 22, 1994, he filed a

---

[3]The plaintiff complained about the flyer to the chief of staff at the engineering and maintenance department, but Chisholm was not disciplined for this behavior.

second charge with the MCAD alleging racial discrimination and retaliation. In 1995, the plaintiff filed a complaint in the Superior Court seeking damages for discrimination by means of racial harassment in the workplace, in violation of G. L. c. 151B, § 4 (1), alleging that he had been subjected to a hostile work environment, and in violation of G. L. c. 151B, § 4 (4), alleging that he had been subjected to adverse employment action because he had expressed opposition to the discriminatory treatment. After a two and one-half week trial, a jury returned a special verdict finding that the MBTA had subjected the plaintiff to a hostile work environment during the period between October 20, 1992, and February 22, 1994, and had retaliated against the plaintiff by taking adverse employment action against him during the period between April 20, 1993, and May 17, 1995. The jury, as stated above, awarded the plaintiff compensatory damages of $500,000 for emotional distress and $5 million in punitive damages.

Considering various posttrial motions, the judge upheld the jury's verdicts on liability and compensatory damages, but allowed the MBTA's request for a remittitur of the punitive damages award, reducing it to $500,000, and allowed the MBTA's motion for a new trial solely on punitive damages to the extent that the plaintiff did not accept the remittitur. The plaintiff rejected the remittitur, and the judge filed a report to the Appeals Court, pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), on all of the issues raised in the case. The Appeals Court concluded that the plaintiff could rely on the continuing violation doctrine to recover for retaliatory acts committed beyond the six-month limitations period permitted by G. L. c. 151B, § 5, but that the anchoring period required to establish the continuing violation commenced on August 22, 1993, and not on April 20, 1993, as instructed by the judge. See *Clifton* v. *Massachusetts Bay Transp. Auth.*, *supra* at 175-176. On the basis of this perceived flaw in the jury instructions, the court held that a new trial on liability and damages (both compensatory and punitive) was necessary.[4] We granted the plaintiff's application for further appellate review, limited to the

---

[4]The Appeals Court also concluded that the Massachusetts Bay Transportation Authority (MBTA) would be entitled to the *Cuddyer* instruction on retrial. See *Clifton* v. *Massachusetts Bay Transp. Auth.*, 62 Mass. App. Ct. 164, 173-

issues stated at the outset of this opinion. We now address those issues.

1. We find no basis to except a claim of retaliation, in violation of G. L. c. 151B, § 4 (4), from the proper scope of the continuing violation doctrine.[5] The scope of G. L. c. 151B, § 4 (4)'s prohibition against retaliatory conduct is not limited to adverse employment decisions taken in response to the filing of a complaint with the MCAD, but includes "discriminat[ion] against any person because he has opposed any practices forbidden under this chapter." "Workplace conduct is not measured in isolation . . . ." *Clark County Sch. Dist.* v. *Breeden*, 532 U.S. 268, 270 (2001). Although unlawful retaliation, typically, may involve a discrete and identifiable adverse employment decision (e.g., a discharge or demotion), it may also consist of a continuing pattern of behavior that is, by its insidious nature, linked to the very acts that make up a claim of hostile work environment. See *Noviello* v. *Boston*, 398 F.3d 76, 89-91 (1st Cir. 2005) (concluding that creation and perpetuation of hostile work

174 (2004). We agree with the Appeals Court on this point. Our different conclusion as to the correctness of the April 20, 1993, date, however, obviates the need for a new trial on liability.

[5]The MBTA contended before the Appeals Court that the continuing violation doctrine has no applicability to claims of a hostile work environment based on race. The court rejected the MBTA's argument in compelling language. See *Clifton* v. *Massachusetts Bay Transp. Auth.*, *supra* at 168-169, 174-175. We are in agreement with the court's analysis and add a few observations of our own. A hostile work environment may be manifested by a series of harassing acts that have been described as "pinpricks [that] only slowly add up to a wound." *Keeler* v. *Putnam Fiduciary Trust Co.*, 238 F.3d 5, 12 (1st Cir. 2001). One pinprick may not be actionable in itself, and its abusive nature may not be apparent except in retrospect, until the pain becomes intolerable. See *Cuddyer* v. *Stop & Shop Supermarket Co.*, *supra* at 533, 538-539. One subjected to a hostile work environment may suffer weeks, months, or even years of persistent and humiliating harassment before reaching the point where the only reasonable course of remedial action is to file a claim with the MCAD. See *id.* at 539-540. As noted by the judge in his memorandum of decision on the posttrial motions, "[h]ostile environment cases are more analogous to corrosion than to explosion." There is no basis to review hostile work environment claims based on sexual harassment under a different standard from hostile work environment claims based on racial harassment. Cf. *Ocean Spray Cranberries, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 642-643 (2004) (applying continuing violation doctrine to claim of handicap discrimination).

environment can comprise retaliatory adverse employment action under Title VII and under G. L. c. 151B). In sum, it is the nature of the unlawful conduct alleged by the plaintiff, independent of the precise formulation of his claim, that allows a plaintiff to invoke an exception to the limitations period for a continuing violation. See *Ocean Spray Cranberries, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 642-643 (2004) (failure to provide reasonable accommodation to handicapped employee); *Cuddyer* v. *Stop & Shop Supermarket Co.*, *supra* at 540 (hostile work environment based on sexual harassment); *Carter* v. *Commissioner of Correction*, 43 Mass. App. Ct. 212, 221-222 (1997) (race and gender discrimination and retaliation).[6] The evidence in this case disclosed numerous instances of hateful discriminatory conduct directed at the plaintiff that, the jury could well have found, were fueled by his initial objections to his coworkers' insults and physical abuse informally lodged with supervisors; his later internal claims of harassment dating back to 1986, and of unequal treatment in his work conditions, brought to the EEO; and, finally, his formal complaints filed with the MCAD. The judge properly instructed the jury on the continuing violation doctrine with respect to the plaintiff's claim of retaliation.

2. At trial, the plaintiff presented evidence of unlawful acts dating back over nine years. To simplify the task of instructing the jury on the applicable time frames for the acts that could be considered by the jury for the purpose of establishing liability and, separately, for the purpose of assessing damages in connection with the plaintiff's independent claims of discrimination and of retaliation, the judge drew a diagram. One shaded portion of the diagram depicted a period commencing April 20, 1993, and ending May 17, 1995, as the time within which an

---

[6]We find it significant that the MCAD (whose policies are entitled to a measure of deference) has stated that retaliation may take the form of "hostile or abusive workplace treatment." *Wareing* v. *New Bedford Sch. Dep't*, 26 M.D.L.R. 242, 246 (2004). The MCAD regulation recognizing continuing violations focuses on the nature of the conduct alleged and makes no distinction among different types of claims. See 804 Code Mass. Regs. § 1.10(2) (1993) ("the six month requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature").

unlawful act of retaliation must have occurred in order for the jury to find the MBTA liable on the plaintiff's retaliation claim. The judge used the diagram as an aid to explain to the jury that, if they were to find the MBTA liable for a continuing violation on the plaintiff's retaliation claim, the anchoring period for that claim commenced on April 20, 1993, the date on which the plaintiff filed his first complaint with the MCAD.

The judge properly set April 20, 1993, as the beginning date for the retaliation anchoring period. Retaliatory conduct occurring after the plaintiff's first complaint to the MCAD was timely, regardless of when, or whether, a new MCAD complaint was filed. See *Cuddyer* v. *Stop & Shop Supermarket Co.*, *supra* at 529-530 & n.8; *Carter* v. *Commissioner of Correction*, *supra* at 218. So long as the alleged retaliatory acts relate to an earlier complaint, a plaintiff is not required to exhaust his administrative remedies before he may bring to court a retaliation claim. Retaliation for filing a complaint of discrimination with the MCAD is subsumed within the original charge. See *id.*; *Borase* v. *M/A-COM, Inc.*, 906 F. Supp. 65, 66-68 (D. Mass. 1995). The law was not clear at the time the plaintiff filed his second claim with the MCAD. It was wise, therefore, for him to file a second charge with the MCAD. To set a date based on a charge that was essentially unnecessary would unfairly punish the plaintiff for his cautiousness.[7] There can be no serious doubt that the retaliation alleged by the plaintiff was related to, or arose out of, the subject of his original MCAD complaint. Contrast *Mole* v. *University of Mass.*, 442 Mass. 582, 595-596 (2004).

3. At the time of trial, the United States Court of Appeals for the First Circuit, interpreting Title VII, had adopted the so-called "revelatory" standard for applying the continuing violation doctrine, which barred a plaintiff from asserting unlawful conduct beyond the limitations period if the plaintiff was, or should have been, aware of the existence of unlawful discrimination during the "untimely" period. See *Provencher* v. *CVS Pharmacy Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir. 1998);

---

[7]Because we conclude that the date set by the judge was correct, we need not discuss the plaintiff's argument that the MBTA failed to preserve its appellate claim of error on this point.

*Sabree* v. *United Bhd. of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 402 (1st Cir. 1990). See also *O'Rourke* v. *Providence*, 235 F.3d 713, 727 (1st Cir. 2001) (recognizing "revelatory" standard). Under the Federal "revelatory" standard, the awareness of discrimination triggers the duty to file a charge with the MCAD, and there is no exception in such circumstances for continuing discriminatory conduct. This court rejected that standard, in *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521 (2001), finding it "fair neither to the employee, who may be forced prematurely to choose litigation as a remedy, nor to the employer, who has a legitimate interest in attempting to resolve allegations of harassment short of time-consuming and expensive litigation." *Id.* at 538. In our view, the Federal standard "fail[ed] to recognize fully that an employee who suffers from recurring acts of abusive . . . conduct that, over time, rise to the level of a hostile work environment, may be unable to appreciate the true character and enormity of the discriminatory environment until after it has continued for an appreciable length of time." *Id.* We then enunciated a new standard, providing that a plaintiff who has demonstrated a continuing violation may assert claims for conduct falling outside of the limitations period, unless the plaintiff "knew or reasonably should have known, more than six months prior to her MCAD filing, that her work situation was pervasively hostile and unlikely to improve and, therefore, a reasonable person in her position, armed with her knowledge, would have filed a seasonable complaint with the MCAD."[8] *Id.* at 541. As has been indicated, the *Cuddyer* decision was decided

[8]The United States Supreme Court has agreed, in substance, with our reasoning in the *Cuddyer* case. In the case of *National R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101 (2002), the Supreme Court expressly rejected one version of the revelatory standard that Federal courts (including the United States Court of Appeals for the First Circuit) had been applying to bar recovery for conduct taking place outside the limitations period for claims asserted under Title VII. See *id.* at 117 n.11, citing *Galloway* v. *General Motors Serv. Parts Operations*, 78 F.3d 1164 (7th Cir. 1996). The Court held that, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," *id.* at 117, and that Title VII "in no way bars a plaintiff from recovering damages for that portion of the hostile environment that falls outside the period for filing a timely charge." *Id.* at 119. The Court emphasized, however, that "[o]ur holding does not leave

almost two years after the jury's verdict in this case. At the time of trial, State law was unsettled.

At the charge conference, the MBTA requested that the judge instruct the jury in accordance with the *Provencher* court's revelatory standard. The judge correctly (and clairvoyantly) rejected that request, based on his prediction that this court would not adopt the *Provencher* standard. The judge instead instructed the jury that, if they found that the MBTA committed at least one act of race discrimination during the anchoring period (on the hostile work environment claim, between October 20, 1992, and February 22, 1994) that substantially contributed to the creation of a hostile work environment, then they could award damages for emotional distress that the plaintiff suffered, going back as far as July of 1986, so long as the discriminatory conduct was similar to, or reasonably related to, the discriminatory conduct that was the subject of the plaintiff's complaint to the MCAD. The judge further instructed the jury that, if they found that the MBTA had committed at least one act of retaliation against the plaintiff during the anchoring period (on the retaliation claim, between April 20, 1993, and May 17, 1995), then they could award damages for emotional distress that the plaintiff suffered, so long as the retaliation was reasonably related to the plaintiff's expressed opposition to the discriminatory conduct complained of. The instructions given accurately stated the law at the time. See *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination*, 406 Mass. 515, 520 (1990); *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 207-208 (1981); *Carter* v. *Commissioner of Correction*, 43 Mass. App. Ct. 212, 221 (1997).

The *Cuddyer* decision substantively changed the law with respect to the continuing violation doctrine, by providing a

employers defenseless" against employees who unreasonably delay in filing a charge based on a hostile work environment. *Id.* at 121. Recognizing that the purpose of the filing requirement is to allow prompt notice to an employer, the Court reasoned that the equitable doctrines of waiver, estoppel, and laches are available to afford relief, in the discretion of a court, in those circumstances where a defendant has been significantly handicapped in its defenses as a result of an employee's "unreasonable and prejudicial delay" in filing a claim. See *id.* at 121-122. Our *Cuddyer* standard is phrased differently, but we note a striking conceptual parallelism.

standard by which a jury could bar, as untimely, past discriminatory events that otherwise would provide a basis for damages. The MBTA now asserts that it is entitled to the benefit of the *Cuddyer* instruction. We agree. The MBTA argued throughout the charge conference that an instruction was warranted to inform the jury that they were permitted to examine the plaintiff's awareness of the discriminatory conduct and that, at some measured point (argued as the "known or should have known" standard), untimely acts of discrimination could not be deemed part of a continuing violation. On the judge's failure so to inform the jury, the MBTA lodged a clear and timely objection. That the MBTA contended that the proper standard was "known or should be known," and not precisely the one ultimately adopted in *Cuddyer*, does not detract from the adequacy of the MBTA's objection. See *Shantigar Found.* v. *Bear Mountain Bldrs.*, 441 Mass. 131, 136 (2004) (issue preserved when judge acknowledged awareness of issue and expressly noted defendant's objection); *Rotkiewicz* v. *Sadowsky*, 431 Mass. 748, 751-752 (2000) (issue preserved when judge acknowledged awareness of issue and expressed intent not to instruct as requested).[9]

The plaintiff in this case endured a hostile work environment and unlawful retaliation (as found by the jury), and presented evidence that he entered complaints as appropriate, throughout nine years of employment with the MBTA, to no avail. One would be hard put to imagine a more shocking or outrageous scenario of discrimination in the workplace. From the viewpoint of this court, the plaintiff appears to have done everything that an employee should do in an attempt to end the discriminatory treatment to which he was subjected. It is possible, however, that a reasonable jury could find that the plaintiff "knew or reasonably should have known, more than six months prior to [his] MCAD filing, that [his] work situation was pervasively hostile and unlikely to improve and, therefore, a reasonable person in [his] position, armed with [his] knowledge, would

---

[9]After the jury rendered their verdict, in support of its motion for judgment notwithstanding the verdict, the MBTA again argued for a standard recognizing that the plaintiff's right to claim damages for a continuing violation, on both his race discrimination and his retaliation claims, should fail if he was aware that he was being discriminated against while the earlier acts, by then untimely, were taking place.

have filed a seasonable complaint with the MCAD." In these circumstances, we conclude that the MBTA, having properly preserved its rights, is entitled to the benefit of the *Cuddyer* instruction. See *Halley* v. *Birbiglia*, 390 Mass. 540, 544-546 (1983) (giving retroactive application of court's later adoption of doctrine of informed consent); *Phillips* v. *Cameron Tool Corp.*, 950 F.2d 488, 491 (7th Cir. 1991) (appellate right to challenge jury instruction preserved where change in settled law pending appeal); *Brown* v. *M & M/Mars*, 883 F.2d 505, 512-513 (7th Cir. 1989) (where law changed by Supreme Court while appeal pending, defendant did not waive right to contest instruction given). See also *Commonwealth* v. *Adjutant*, 443 Mass. 649, 667 (2005) (giving retroactive application of new common-law rule of evidence on victim's prior conduct to defendant who alleged error and argued for rule on direct appeal).

Our conclusion does not necessitate a new trial in the entirety. The jury's finding of liability remains unassailable. The jury rendered a special verdict finding that the MBTA discriminated against the plaintiff because of his race by subjecting him to a hostile work environment during the period between October 20, 1992, and February 22, 1994, and by taking adverse employment action against him because he expressed his opposition to a discriminatory practice internally with the MBTA or filed a complaint with the MCAD during the period between April 20, 1993, and May 17, 1995. The special verdict form submitted to the jury, however, did not include express questions whether the jury had found the existence of a continuing violation on either claim. On this record, it is impossible to ascertain whether the jury based their assessment of the amount of damages that would adequately compensate the plaintiff for the emotional distress caused by the MBTA's discrimination and retaliation, and the amount of appropriate punitive damages, on a continuing violation.[10] As a consequence, there must be a new trial on compensatory and punitive damages.

---

[10]The standard announced in the *Cuddyer* case would have no effect on the jury's determination of liability. We made clear in that decision that a plaintiff with a seasonable claim may use time-barred events that occurred prior to the limitations period as background evidence to establish a hostile work environment, even though he cannot recover damages for those events. See *Cuddyer* v. *Stop & Shop Supermarket Co.*, *supra* at 530 n.10, 538 n.20, 541.

4. Because there will be a new trial on damages, we need not discuss the high punitive damages awarded the plaintiff in this case, or the propriety of the judge's reduction of that award to one-tenth of its former size. The instructions given by the judge at trial with respect to compensatory and punitive damages appear to have been adequate. On retrial, the judge should instruct on compensatory damages in the usual manner and on punitive damages in accordance with the standards set forth in *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 16-17 (1998).

We comment briefly, however, on the judge's authority to order a remittitur, should the jury, on retrial, award punitive damages that precipitate a motion under Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974), for remittitur or for a new trial. A judge acting on a motion for remittitur has broad discretion. See *Blake* v. *Commissioner of Correction*, 403 Mass. 764, 770-771 (1989), and cases cited. Rule 59 (a) requires that a judge remit only so much of the damages "as the court adjudges is excessive," in order to bring the award within the range of verdicts supported by the evidence. See *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 662 (1978). A remittitur of punitive damages (which do not purport to relate directly to the plaintiff's loss) raises slightly different issues. General factors to be considered in determining whether a punitive damage award is excessive were set forth by the United States Supreme Court in *BMW of N. Am., Inc.* v. *Gore*, 517 U.S. 559 (1996), and adopted by this court in *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 826-827 (1997). They are "the degree of reprehensibility of the defendant's conduct"; the ratio of the punitive damage award to the "actual harm inflicted on the plaintiff"; and a comparison of "the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct." *BMW of N. Am, Inc.* v. *Gore, supra* at 575, 580, 583. In addition, we point out the following considerations that bear on the status of the MBTA as a public entity: first, the "Commonwealth and its subdivisions are liable for punitive damages [under G. L. c. 151B] on the same basis as other 'persons' and 'employers.' " *Bain* v. *Springfield*, 424 Mass. 758, 763 (1997). Second, deliberate violations of G. L. c. 151B, by "those charged with the public duty to enforce the

law equally," present a heightened degree of reprehensibility, *Dalrymple* v. *Winthrop*, 50 Mass. App. Ct. 611, 621 (2000) (finding $300,000 punitive damages award against town not unreasonable or excessive in respect to ratio of actual harm [$275,000] found by jury). And, third, G. L. c. 151B, § 9, provides no statutory cap on the amount of punitive damages that are allowable for racial discrimination. In our view, given that no limiting language appears in the statute, and that the statute contains specific provisions allowing for three (but not less than two) times actual damages for discrimination on the basis of age, it is fair to infer that the Legislature intends to punish employers who discriminate, with no restrictions as to the type of discrimination that occurred here. See *Labonte* v. *Hutchins & Wheeler, supra* at 826. A proper punitive damage award in this case would be a sufficient amount to send a clear message to the MBTA's management of condemnation for its reprehensible behavior and of warning that it must put an end to any legacy of discrimination that still pervades that authority.[11]

5. The order denying the MBTA's motion for judgment notwithstanding the verdict is affirmed insofar as it denies a judgment for the defendant on liability. The portion of the judgment finding for the plaintiff on liability is affirmed. The order granting a remittitur on punitive damages is vacated. The portion of the judgment assessing compensatory and punitive damages is vacated. The case is remanded to the Superior Court for a new trial on the amount of compensatory and punitive damages in accordance with this opinion.

The plaintiff has requested an award of appellate attorney's fees and costs in connection with this appeal. See G. L. c. 151B, § 9. Although he did not prevail on all of his claims before this court, we do not view this as a case where a plaintiff should not

---

[11]The Appeals Court concluded that prejudgment and postjudgment interest should be awarded on the compensatory damages awarded the plaintiff (see *Mirageas* v. *Massachusetts Bay Transp. Auth.*, 391 Mass. 815, 819-821 [1984]; G. L. c. 161A, § 38), but that any punitive portion of the damages award should include postjudgment interest only. *Clifton* v. *Massachusetts Bay Transp. Auth., supra* at 178-179, citing *McEvoy Travel Bur., Inc.* v. *Norton Co.*, 408 Mass. 704, 717 n.9 (1990). We agree with these conclusions and note that the determinations are not within the scope of the allowance of further appellate review.

be allowed appellate attorney's fees. The plaintiff may file a petition for reasonable attorney's fees and costs in accordance with the procedure set forth in *Fabre* v. *Walton*, 441 Mass. 9 (2004).

*So ordered.*